[No. S006651. July 27, 1989.]

CITY OF SANTA CRUZ, Petitioner, v.
THE MUNICIPAL COURT FOR THE SANTA CRUZ JUDICIAL
DISTRICT OF SANTA CRUZ COUNTY, Respondent;
HOWARD KENNEDY, Real Party in Interest.

**COUNSEL**

Gerald D. Bowden, John G. Barisone and Atchison & Anderson for Petitioner.

William B. Sage, City Attorney (Huntington Beach), John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Joel Carey and Derald Granberg, Deputy Attorneys General, as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Samara C. Marion, Diana L. August and Biggam, Christiansen & Minsloff for Real Party in Interest.

**OPINION**

**KAUFMAN, J.**—We granted review in this case to determine whether a showing of "good cause" for discovery of peace officer personnel records, pursuant to Evidence Code section 1043, subdivision (b),[1] requires an affidavit based on the affiant's personal knowledge of the averments set forth therein. We hold that personal knowledge is not a requirement under section 1043, subdivision (b).

### FACTUAL AND PROCEDURAL BACKGROUND

On the evening of December 2, 1987, real party in interest (hereafter defendant) Howard Kennedy was arrested and charged with resisting arrest (Pen. Code, § 148) and exhibiting a knife (Pen. Code, § 417). Defendant

---

[1] Unless otherwise specified, all statutory references are to the Evidence Code.

subsequently filed a motion for discovery of all prior complaints of excessive force or violence involving the two arresting officers, Harris and Dickson. The motion was based on the police reports of the incident and a declaration of defendant's attorney.

Officer Harris's report stated in substance as follows: On the evening in question, he and Officer Dickson responded to a report of an individual brandishing a knife. The alleged victim of the assault identified defendant as the assailant. The officers ordered defendant to place his hands on a fence, step back and spread his legs. Defendant placed his hands on the fence but refused to step back. When Officer Dickson began a patdown search, defendant became agitated and removed his hands from the fence. Officer Dickson then pushed defendant against the fence and ordered him to leave his hands there. When defendant again removed his hands, both officers grabbed him by the wrists and ordered him not to resist. As soon as they released him, however, defendant turned as if to walk away, whereupon both officers again attempted to grab his arms. Defendant then swung his fist at Officer Harris but missed. In response, Officer Harris struck defendant with, in his own words, a "closed left fist in the side of his face causing him to lose balance." Officer Dickson then wrestled defendant to the ground, Officer Harris joined in, and the three "wrestled around" until Officer Harris was able to place handcuffs on defendant. A supplemental police report filed by the backup officer states that both the alleged victim and his friend, referred to in the police report as "independent witnesses," were of the opinion that the officers "used the correct amount of force necessary. . . ."

The declaration of defendant's attorney in support of the motion stated, in pertinent part, as follows: "The requested documents and records are relevant to a defense of the charges. . . . [¶] I am informed and believe based upon information contained in the police report as well as from [defendant], that Officers Harris and Dickson . . . used excessive, unreasonable and unnecessary force to arrest [defendant] and that said excessive force was beyond the scope of the duties of said arresting officers so as to make said arrest illegal and otherwise improper. [¶] A material and substantial issue in the trial of this matter will be the character, habits, customs and credibility of the officers. [¶] I am informed and believe, and thereon allege that Officers Dickson and Harris grabbed [defendant] and handcuffed him. Officers Dickson and Harris then grabbed [defendant] by the hair and threw him down to the ground. One officer then stepped on [defendant's] head, while the other twisted his arm behind his back."

Counsel's declaration continued: "I believe that other complaints of use of excessive force by the officer[s] may have been filed by members of the

public resulting in investigation and related reports to which the prosecution has sole access; that such complaints would tend to show or will lead to evidence which will show a tendency or propensity on the part of the arresting officer[s] herein to engage in the use of unlawful and excessive force in the execution of arrests." The declaration further alleged on information and belief that the records sought were within the possession, custody or control of the City of Santa Cruz Police Department (City).

At the hearing on the motion, the municipal court judge ruled that defendant had made a sufficient showing of good cause to justify an in camera hearing, pursuant to the provisions of sections 1043, subdivision (b) and 1045, subdivision (b), to determine whether the materials sought were relevant to the pending litigation. The court further ruled that any disclosure would be limited to the name, address and phone number of any prior complainants and witnesses and the date of any prior incidents. The court explicitly declined to disclose any documents, records or copies of reports, as well as any information relating to disciplinary proceedings or investigations of the police department.[2]

In so ruling, the court expressly rejected the City's contention that counsel's declaration in support of the motion was inherently inadequate because the allegations were based on "information and belief." While acknowledging that *City of Santa Cruz* v. *Superior Court* (1987) 190 Cal.App.3d 1669 [236 Cal.Rptr. 155] supported the City's position, the court held that the better rule and the overwhelming weight of authority, including two cases decided after *City of Santa Cruz*, i.e., *Larry E.* v. *Superior Court* (1987) 194 Cal.App.3d 25 [239 Cal.Rptr. 264] and *Jalilie* v. *Superior Court* (1987) 195 Cal.App.3d 487 [240 Cal.Rptr. 662], held that allegations on information and belief may establish good cause for discovery under section 1043, subdivision (b). In any event, the court observed that ignoring counsel's declaration, the "police reports, standing on their own, are satisfactory justification for the motion in this case."

The City thereupon petitioned the superior court for a writ of mandate to compel the municipal court to vacate its order. The superior court denied

---

[2] In stating that the municipal court "ordered an in camera inspection of the officers' employment files, *after which it would release*" the names, addresses and telephone numbers of everyone who had filed a complaint against the officers (dis. opn., *post*, p. 95, italics added), and that the "judge in this case *indicated he would order* [ ] *the release* of the names, addresses and telephone numbers of prior complainants," (dis. opn., *post*, p. 97, italics added), the dissent plainly misconstrues the trial court's ruling in this matter. The court ruled only that defendant had made a sufficient showing of good cause under section 1043 to justify an in camera review of the records sought under section 1045; the court did not state that it "would release" any information whatsoever. A decision to release information to the defendant necessarily requires a finding of relevance pursuant to the criteria set forth in section 1045, a finding that the trial court did *not* make in this case.

the petition. The City then petitioned the Court of Appeal. The latter, after soliciting and receiving opposition, issued a peremptory writ in the first instance directing the municipal court to vacate its original order and to enter a new and different order denying the motion. In so ruling, the Court of Appeal reaffirmed its earlier holding in *City of Santa Cruz* v. *Superior Court, supra,* 190 Cal.App.3d 1669, that averments in an affidavit on information and belief cannot satisfy the good cause requirements of section 1043, subdivision (b).

We granted review to resolve a widening conflict among the Courts of Appeal over an issue of ongoing statewide importance. We now reverse the judgment of the Court of Appeal.

## DISCUSSION

### A. *The Statutory Background*

Notwithstanding contrary decisions in one Court of Appeal and the views of the dissenters here, we find the statutory scheme clear, the statutory language quite plain and the legislative intent manifest.

In 1978, the California Legislature codified the privileges and procedures surrounding what had come to be known as *"Pitchess* motions" (after our decision in *Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305]) through the enactment of Penal Code sections 832.7 and 832.8[3] and Evidence Code sections 1043 through 1045.[4] The Penal Code

---

[3] Penal Code section 832.7 in pertinent part provides: "Peace officer personnel records and records maintained pursuant to Section 832.5, or information obtained from these records, are confidential and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code. . . ."

Penal Code section 832.8 in pertinent part provides: "As used in Section 832.7, 'personnel records' means any file maintained under that individual's name by his or her employing agency and containing records relating to: . . . [¶] (d) Employee advancement, appraisal, or discipline; [¶] (e) Complaints, or investigations of complaints, concerning an event or transaction in which he participated, or which he perceived, and pertaining to the manner in which he performed his duties; or [¶] (f) Any other information the disclosure of which would constitute an unwarranted invasion of personal privacy."

[4] Section 1043 provides: "(a) In any case in which discovery or disclosure is sought of peace officer personnel records or records maintained pursuant to Section 832.5 of the Penal Code or information from such records, the party seeking such discovery or disclosure shall file a written motion with the appropriate court or administrative body upon 10 days' written notice to the governmental agency which has custody and control of such records. Upon receipt of such notice the governmental agency served shall immediately notify the individual whose records are sought.

"(b) Such motion shall include: [¶] (1) Identification of the proceeding in which discovery or disclosure is sought, the party seeking discovery or disclosure, the peace officer whose records are sought, the governmental agency which has custody and control of such records,

provisions define "personnel records" (Pen. Code, § 832.8) and provide that such records are "confidential" and subject to discovery only pursuant to the procedures set forth in the Evidence Code. (Pen. Code, § 832.7.) Evidence Code sections 1043 and 1045 set out the procedures for discovery in detail. As here pertinent, section 1043, subdivision (a) requires a written motion and notice to the governmental agency which has custody of the records sought, and subdivision (b) provides that such motion shall include, inter alia, "(2) A description of the type of records or information sought; and [¶] (3) Affidavits showing good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation and stating upon reasonable belief that such govern-

---

and the time and place at which the motion for discovery or disclosure shall be heard; [¶] (2) A description of the type of records or information sought; and [¶] (3) Affidavits showing good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation and stating upon reasonable belief that such governmental agency identified has such records or information from such records.

"(c) No hearing upon a motion for discovery or disclosure shall be held without full compliance with the notice provisions of this section except upon a showing by the moving party of good cause for noncompliance, or upon a waiver of such hearing by the governmental agency identified as having such records."

Section 1044 provides: "Nothing in this article shall be construed to affect the right of access to records of medical or psychological history where such access would otherwise be available under Section 996 or 1016."

Section 1045 provides: "(a) Nothing in this article shall be construed to affect the right of access to records of complaints, or investigations of complaints, or discipline imposed as a result of such investigations, concerning an event or transaction in which the peace officer participated, or which he perceived, and pertaining to the manner in which he performed his duties, provided that such information is relevant to the subject matter involved in the pending litigation.

"(b) In determining relevance the court shall examine the information in chambers in conformity with Section 915, and shall exclude from disclosure: [¶] (1) Information consisting of complaints concerning conduct occurring more than five years before the event or transaction which is the subject of the litigation in aid of which discovery or disclosure is sought. [¶] (2) In any criminal proceeding the conclusions of any officer investigating a complaint filed pursuant to Section 832.5 of the Penal Code. [¶] (3) Facts sought to be disclosed which are so remote as to make disclosure of little or no practical benefit.

"(c) In determining relevance where the issue in litigation concerns the policies or pattern of conduct of the employing agency, the court shall consider whether the information sought may be obtained from other records maintained by the employing agency in the regular course of agency business which would not necessitate the disclosure of individual personnel records.

"(d) Upon motion seasonably made by the governmental agency which has custody or control of the records to be examined or by the officer whose records are sought, and upon good cause showing the necessity thereof, the court may make any order which justice requires to protect the officer or agency from unnecessary annoyance, embarrassment or oppression.

"(e) The court shall, in any case or proceeding permitting the disclosure or discovery of any peace officer records requested pursuant to Section 1043, order that the records disclosed or discovered may not be used for any purpose other than a court proceeding pursuant to applicable law."

mental agency identified has such records or information from such records."

A finding of "good cause" under section 1043, subdivision (b) is only the *first* hurdle in the discovery process. Once good cause for discovery has been established, section 1045 provides that the court shall then examine the information "in chambers" in conformity with section 915 (i.e., out of the presence of all persons except the person authorized to claim the privilege and such other persons as he or she is willing to have present), and shall *exclude* from disclosure several enumerated categories of information, including: (1) complaints more than five years old, (2) the "conclusions of any officer investigating a complaint . . ." and (3) facts which are "so remote as to make disclosure of little or no practical benefit." (§ 1045, subd. (b).)

In addition to the exclusion of specific categories of information from disclosure, section 1045 establishes general criteria to guide the court's determination and insure that the privacy interests of the officers subject to the motion are protected. Where the issue in litigation concerns the policies or pattern of conduct of the employing agency, the statute *requires* the court to "consider whether the information sought may be obtained from other records . . . which would not necessitate the disclosure of individual personnel records." (§ 1045, subd. (c).) The law further provides that the court may, in its discretion, "make *any order which justice requires* to protect the officer or agency from unnecessary annoyance, embarrassment or oppression." (§ 1045, subd. (d), italics added.) And, finally, the statute mandates that in any case where disclosure is permitted, the court "*shall . . .* order that the records disclosed or discovered shall not be used for any purpose other than a court proceeding pursuant to applicable law." (§ 1045, subd. (e), italics added.)

As statutory schemes go the foregoing is a veritable model of clarity and balance. Section 1043 clearly requires a showing of "good cause" for discovery in two general categories: (1) the "materiality" of the information or records sought to the "subject matter involved in the pending litigation," and (2) a "reasonable belief" that the governmental agency has the "type" of information or records sought to be disclosed. (§ 1043, subd. (b).)

The relatively low threshold for discovery embodied in section 1043 is offset, in turn, by section 1045's protective provisions which: (1) explicitly "exclude from disclosure" certain enumerated categories of information (§ 1045, subd. (b)); (2) establish a procedure for in camera inspection by the court prior to any disclosure (§ 1045, subd. (b)); and (3) issue a forceful directive to the courts to consider the privacy interests of the officers whose

records are sought and take whatever steps "justice requires" to protect the officers from "unnecessary annoyance, embarrassment or oppression." (§ 1045, subds. (c), (d) & (e).)

The statutory scheme thus carefully balances two directly conflicting interests: the peace officer's just claim to confidentiality, and the criminal defendant's equally compelling interest in all information pertinent to his defense. The relatively relaxed standards for a showing of good cause under section 1043, subdivision (b)—"materiality" to the subject matter of the pending litigation and a "reasonable belief" that the agency has the type of information sought—insure the production for inspection of all potentially relevant documents. The in camera review procedure and disclosure guidelines set forth in section 1045 guarantee, in turn, a balancing of the officer's privacy interests against the defendant's need for disclosure. As a further safeguard, moreover, the courts have generally refused to disclose verbatim reports or records of any kind from peace officer personnel files, ordering instead (as the municipal court directed here) that the agency reveal only the name, address and phone number of any prior complainants and witnesses and the dates of the incidents in question. (See *Kelvin L.* v. *Superior Court* (1976) 62 Cal.App.3d 823, 828-829 [133 Cal.Rptr. 325]; *Carruthers* v. *Municipal Court* (1980) 110 Cal.App.3d 439, 441 [168 Cal.Rptr. 33].)

B. *Application of the Statutory Standards*

1. *The Materiality of the Requested Information*

It is against this statutory backdrop that the Court of Appeal's holding that defendant failed to establish good cause for discovery must be evaluated. In determining the question of "good cause," however, we do not operate in a decisional vacuum. We have previously held that the Legislature, in adopting the statutory scheme in question, "not only reaffirmed but expanded" the principles of criminal discovery articulated by this court in the landmark case of *Pitchess* v. *Superior Court, supra,* 11 Cal.3d 531. (*People* v. *Memro* (1985) 38 Cal.3d 658, 679, fn. 19, 680 [214 Cal.Rptr. 832, 700 P.2d 446].)

These principles were applied in *Pitchess* to permit the discovery of police personnel records. ■ As we explained, a criminal defendant's right to discovery is based on the "fundamental proposition that [an accused] is entitled to a fair trial and an intelligent defense in light of all relevant and reasonably accessible information." (*Pitchess* v. *Superior Court, supra,* 11 Cal.3d at p. 535.) *Pitchess* made it clear that "an accused . . . may compel discovery by demonstrating that the requested information will facilitate the ascertainment of the facts and a fair trial." (11 Cal.3d at p. 536.) In contrast

to the detailed showing required by some civil discovery statutes (Code Civ. Proc., §§ 1985, 2036), the requisite showing in a criminal matter "may be satisfied by general allegations which establish some cause for discovery" other than a mere desire for all information in the possession of the prosecution. (11 Cal.3d at pp. 536-537.) The information sought must, however, be "requested with adequate specificity to preclude the possibility that defendant is engaging in a 'fishing expedition.'" (*Id.* at p. 538.)

*Pitchess* involved an arrestee who asserted self-defense to a charge of battery on a police officer. The defendant sought discovery of records of prior complaints against the officers concerning the officers' propensity for violence. We held that the information was material, noting that the information could be used to cross-examine the officers at trial and was "unquestionably relevant and admissible" as character evidence of the officers' tendency to engage in violence. (11 Cal.3d at p. 537; see § 1103.)

We recently returned to the issue of "materiality" for discovery of police records in *People* v. *Memro, supra,* 38 Cal.3d 658. *Memro* involved an arrestee who alleged that his confession to a murder had been coerced. He sought discovery of records of prior complaints of violence against the interrogating officers. Applying the materiality standard of section 1043 (informed by the principles set forth in *Pitchess*), we held that the defendant had demonstrated good cause for the information requested. (38 Cal.3d at p. 684.) Counsel's declaration asserted that the confession had been coerced. (*Id.* at p. 682.) Discovery might lead to admissible evidence that the interrogating officers had a "habit or custom" of obtaining confessions by use of excessive force. (*Id.* at p. 681; see § 1105.) Hence, we concluded that "counsel's allegations sufficiently 'set forth the materiality' of the requested information. (Evid. Code, § 1043, subd. (b)(3).)" (*Id.* at p. 682.)

■ Applying these same principles to the case at bar, we are similarly persuaded that defendant here has sufficiently demonstrated the materiality of the requested records and information. Defendant is charged with resisting arrest. (Pen. Code, § 148.) The police reports make clear that considerable force was used to effect the arrest. Counsel's declaration asserts that the officers used excessive force "so as to make said arrest illegal and otherwise improper." The declaration sets forth, on the basis of information and belief, a specific factual scenario to support that assertion. Counsel avers that she seeks the information relating to prior complaints of excessive force against the arresting officers to "show a tendency or propensity on the part of the arresting officers[s] herein to engage in the use of unlawful and excessive force in the execution of the arrests."

Viewed in conjunction with the police reports, counsel's averments establish a plausible factual foundation for an allegation of excessive force, put the court on notice that the officers' alleged use of excessive force will likely be an issue at trial, and articulate a valid theory as to how the information sought might be admissible. (See §§ 1103, 1105; *Pitchess* v. *Superior Court, supra,* 11 Cal.3d at p. 537; *People* v. *Memro, supra,* 38 Cal.3d at pp. 681-682.) Defendant has plainly demonstrated the materiality of the requested information in satisfaction of section 1043, subdivision (b).

### 2. *The Statute Does Not Require Personal Knowledge of the Material Facts*

■ The Court of Appeal nevertheless concluded that counsel's declaration was inadequate to establish good cause for discovery because it was not based on counsel's *personal knowledge* of the material facts and averments.[5] This conclusion was unwarranted.

Section 1043 contains no requirement of "personal knowledge" on the part of the affiant. (See *People* v. *Memro, supra,* 38 Cal.3d at p. 676.) Indeed, an overwhelming majority of the Courts of Appeal have permitted discovery under section 1043, subdivision (b), based on affidavits containing averments on information and belief. (See, e.g., *Jalilie* v. *Superior Court, supra,* 195 Cal.App.3d at p. 490; *Larry E.* v. *Superior Court, supra,* 194 Cal.App.3d at pp. 29-31; *Pierre C.* v. *Superior Court* (1984) 159 Cal.App.3d 1120, 1122-1123 [206 Cal.Rptr. 82]; *Arcelona* v. *Municipal Court* (1980) 113 Cal.App.3d 523, 527 [169 Cal.Rptr. 877]; see also *People* v. *Memro, supra,* 38 Cal.3d at p. 676 [holding that § 1043, subd. (b) does not require the personal affidavit of the accused].)

Nevertheless, the Court of Appeal in the instant matter, relying on its earlier decision in *City of Santa Cruz* v. *Superior Court, supra,* 190 Cal.App.3d 1669, held that a showing of materiality under section 1043, subdivision (b) requires the personal knowledge of the affiant. The court's holding was based on the following reasoning: An affidavit, the court noted, is generally presumed to be based on the personal knowledge of the affiant. Accordingly, an affidavit on information and belief is an "anomaly," a "contradiction in terms." Since section 1043, subdivision (b) expressly requires an "affidavit" to show that the information sought is material to the

---

[5] The Court of Appeal apparently overlooked the municipal court's finding that the police reports, standing alone, were sufficient to establish good cause. Section 1046 requires that every motion in which the party seeking disclosure is alleging excessive force "shall include a copy of the police report setting forth the circumstances under which the party was stopped and arrested."

pending litigation, it must implicitly require that such a showing be based on personal knowledge.

It is a nice but wholly specious syllogism that the Court of Appeal constructs, for it rests on false assumptions. It assumes, incorrectly, that an affidavit cannot contain allegations on the basis of information and belief (or hearsay) and that an affidavit which does has no legal significance. Of course, it is true that an affidavit is normally presumed to state matters personally known to the affiant and lacks evidentiary value, in a variety of civil contexts, when based on information and belief, or hearsay. (See, e.g., *Star Motor Imports, Inc.* v. *Superior Court* (1979) 88 Cal.App.3d 201 [151 Cal.Rptr. 721] [an affidavit in support of a petition for writ of mandate must be based on personal knowledge].)

It is decidedly *not* true, however, that an affidavit upon information and belief is an anomaly in the law, bereft of legal significance. On the contrary, as the United States Supreme Court has stated, "the value of averments on information and belief in the procedure of the law is recognized." (*Berger* v. *United States* (1921) 255 U.S. 22, 34 [65 L.Ed. 481, 486, 41 S.Ct. 230].) Indeed, there are numerous exceptions to the general rule prohibiting affidavits on information and belief, either where the facts to be established are incapable of positive averment, or where expressly permitted by statute. (See generally 3 DeMeo, Cal. Deposition & Discovery Practice, § 15.01(29), p. 15.01-44; 3 Am.Jur.2d, Affidavits, §§ 22, 23, pp. 482-485.) As this court explained in *Brown* v. *Happy Valley Fruit Growers* (1929) 206 Cal. 515, 520-521 [274 P. 977], " "Whenever the statute, either in express terms or by implication, requires a person to make a statement which from the very nature of things can only be made on information and belief, an affidavit in that form meets the demands of the statute.' "

Thus, courts have long held that affidavits on information and belief may be sufficient in a variety of contexts where the facts would otherwise be difficult or impossible to establish. (See, e.g., *Berger* v. *United States, supra,* 255 U.S. at pp. 33-34 [65 L.Ed.2d at pp. 485-486] [affidavit on information and belief sufficient to support a motion for disqualification of a trial judge]; *Blackman* v. *MacCoy* (1959) 169 Cal.App.2d 873, 879-880 [338 P.2d 234] [affidavit on information and belief sufficient to support disqualification motion pursuant to Code Civ. Proc., § 170]; *Brown* v. *Happy Valley Fruit Growers, supra,* 206 Cal. at pp. 520-521; [affidavit on information and belief adequate to support change of venue motion]; *Davis-Heller-Pearce Co.* v. *Ramont* (1924) 66 Cal.App. 778, 780 [226 P. 972] [affidavit on information and belief sufficient to support motion to quash service]; *People* v. *Smith* (1976) 17 Cal.3d 845, 850 [132 Cal.Rptr. 397, 553 P.2d 557] [police officer's

affidavit based on informant's statements sufficient for issuance of search warrant].)

Moreover, the Legislature may expressly authorize the use of affidavits on information and belief to support a particular pleading or motion. (See, e.g., Code Civ. Proc., § 431.30 [affidavit on information and belief adequate for denial of allegations in complaint]; Code Civ. Proc., § 446 [affidavit on information and belief sufficient for verification of pleadings]; Code Civ. Proc., § 482.040 [affidavit on information and belief adequate to support application for writ of attachment].)

Of course, the Legislature may also *preclude* the use of affidavits on information and belief by expressly requiring allegations based on "personal knowledge." (See, e.g., Code Civ. Proc., § 437c, subd. (d) [affidavits in support of motion for summary judgment "shall be made . . . on personal knowledge"]; see generally 2 Cal. Civil Procedure Before Trial (Cont.Ed.Bar 1978) § 23.42, p. 36.)

■ Thus, it is simply incorrect to suggest that a statute which requires the filing of an "affidavit" necessarily implies a requirement of personal knowledge on the part of the affiant. On the contrary, it is a common legislative as well as judicial practice to allow the filing of affidavits on information and belief. Those courts which have granted motions for discovery of police personnel records on the basis of such motions, both before (see *In re Valerie E.* (1975) 50 Cal.App.3d 213, 217-219 [123 Cal.Rptr. 242, 86 A.L.R.3d 1163]; *Kelvin L.* v. *Superior Court, supra,* 62 Cal.App.3d at p. 828; *Hinojosa* v. *Superior Court* (1976) 55 Cal.App.3d 692, 696-697 [127 Cal.Rptr. 664]) and after the enactment of section 1043 (see *Jalilie* v. *Superior Court, supra,* 195 Cal.App.3d at p. 490; *Larry E.* v. *Superior Court, supra,* 194 Cal.App.3d at pp. 29-31; *Pierre C.* v. *Superior Court, supra,* 159 Cal.App.3d at pp. 1122-1123, *Arcelona* v. *Municipal Court, supra,* 113 Cal.App.3d at p. 527), have most assuredly not relied on a "legal anomaly."

Moreover, it is fair to assume that the Legislature was aware of such cases when it enacted section 1043; if its intent was truly to abrogate the use of affidavits on information and belief and to require affidavits based on personal knowledge, it is reasonable to assume that it would have done so explicitly. (*People* v. *Memro, supra,* 38 Cal.3d at p. 679, fn. 19.) It obviously knew how. (See Code Civ. Proc., § 437c, subd. (b).) We decline to redraft the statute to impose such a burdensome requirement where the Legislature has conspicuously failed to do so.

We need not speculate, however, as to the Legislature's intentions in this regard. The legislative history of section 1043 reveals that the Legislature expressly considered and *rejected* a requirement of personal knowledge.

As originally introduced in the Senate and later modified in the Senate Committee on the Judiciary, the initial drafts of section 1043 (Sen. Bill No. 1436 (1977-1978 Reg. Sess.)) differed from the final version in one significant respect. The Senate Bill as amended provided as follows: "(b) Such motion shall include: [¶] . . . (2) A description of the particular records or information sought; and [¶] (3) Affidavits showing good cause for the discovery or disclosure sought, *setting forth in full detail and upon personal knowledge the materiality thereof to the issues in litigation,* and stating that such governmental agency identified has the records or information from such records if any exist in its custody and control." (Sen. Amend. to Sen. Bill No. 1436 (1977-1978 Reg. Sess.) Apr. 3, 1978, italics added.)[6]

The italicized language was subsequently deleted, however, by the Assembly Committee on Criminal Justice and replaced by the language of the current statute, which of course requires only that the affidavit set forth the "materiality" of the requested records to the "subject matter" of the litigation. (Assem. Amend. to Sen. Bill No. 1436 (1977-1978 Reg. Sess.) Aug. 30, 1978.) A committee staff report accompanying the Assembly amendments explained that the original language was "dropped because it required *more than the petitioner could likely show at that stage in the proceeding. The purpose of discovery is to find detail. If the petitioner already had the particulars of the records he would not need to use discovery.*" (Assem. Com. on Crim. Justice, analysis of Sen. Bill No. 1436 (1977-1978 Reg. Sess.) Aug. 28, 1978, italics added.)

 Thus, the legislative history demonstrates that the notion of requiring a showing of materiality based on "personal knowledge" and "full detail" of the relevant facts was considered and expressly *rejected* by the legislative draftsmen. The legislative history, the case law background, and the statutory language all point to the same conclusion: the "materiality" component of section 1043, subdivision (b) may be satisfied by affidavits based on information and belief.

3. *The Statute Does Not Require Personal Knowledge of Particular Prior Complaints*

 As noted earlier, in addition to a showing of materiality, section 1043, subdivision (b) also requires a "description of the type of records or

---

[6]The language of the Senate bill was apparently modeled on Code of Civil Procedure section 1985, which requires an affidavit in support of a subpoena duces tecum "showing good cause for the production . . . , specifying the exact matters or things desired to be produced, setting forth in full detail the materiality thereof to the issues involved in the case, and stating that the witness has the desired matters or things in his possession or under his control." As noted above, *Pitchess* expressly rejected this section as an appropriate model for criminal discovery. (11 Cal.3d at pp. 536-537.)

information sought" and affidavits "stating upon reasonable belief" that the governmental agency *"has such records* or information from such records." (Italics added.) The Court of Appeal construed this provision to hold that the affiant must demonstrate personal knowledge of the particular items sought to be disclosed. Since counsel's declaration stated only a "belie[f]" that other complaints of excessive force "may have been filed," the Court of Appeal concluded that defendant's motion failed to establish good cause for discovery. That conclusion was erroneous.

■ The fundamental objective of statutory interpretation is to ascertain and effectuate the legislative intent. (*Metromedia, Inc.* v. *City of San Diego* (1982) 32 Cal.3d 180, 187 [185 Cal.Rptr. 260, 649 P.2d 902].) In determining such intent we look first to the words of the statute themselves, giving them their usual and ordinary meaning. (*Committee of Seven Thousand* v. *Superior Court* (1988) 45 Cal.3d 491, 501 [247 Cal.Rptr. 362, 754 P.2d 708]; *Young* v. *Haines* (1986) 41 Cal.3d 883, 897 [226 Cal.Rptr. 547, 718 P.2d 909].)

■ The language of section 1043, subdivision (b) is clear and unambiguous. The statute expressly provides that a motion for discovery of peace officer personnel records shall include a description "of the *type* of records or information sought," as well as a statement *"upon reasonable belief"* that the governmental agency "has such records or information." (§ 1043, subd. (b), italics added.) As previously discussed, it is a common legislative practice to provide for the filing of affidavits on less than personal knowledge. That is precisely what the Legislature chose to do here; we are not at liberty to second-guess that decision.

Moreover, it is manifest that a showing of "reasonable belief" does *not* require personal knowledge, but may be premised upon a *rational inference* from known or reasonably assumed facts. Black's Law Dictionary defines "reasonable" as "fair, proper, just, . . . rational." (Black's Law Dict. (5th ed. 1979) p. 1138.) Black's further defines "belief" as a "[c]onviction of the mind, *arising not from actual perception or knowledge, but by way of inference,* or from evidence or information derived from others." (Black's Law Dict., *supra,* at p. 141, italics added.) ■ "The words 'reasonably believes' . . . denote the fact that the actor believes that a given fact or combination of facts exists, and that the circumstances which he knows . . . are such as to cause a reasonable man so to believe." (Black's Law Dict., *supra,* at p. 1138; accord Ballantine's Law Dict. (3d ed. 1969) p. 1060 [A reasonable belief is "a belief begotten by attendant circumstances fairly creating it, and honestly entertained."].)

■ It is equally apparent that the statute, in calling for a description of the "type" of records sought to be disclosed, does not require the affiant to prove the existence of *particular* records. The dictionary defines "type" as

"a kind, class or group. . . ." (Webster's New World Dict. (2d ed. 1974) p. 1538.) Clearly, an affidavit which describes the information sought as consisting of prior "complaints of excessive force" by specific officers, as counsel's declaration here alleged, has specified a class, group or "type" of information within the plain meaning of the statute.

Case law lends additional support to this interpretation. Prior to the enactment of section 1043, the Courts of Appeal had overwhelmingly rejected the notion that defendants seeking discovery of police records of citizen complaints must demonstrate knowledge of prior complaints. (See, e.g., *Caldwell* v. *Municipal Court* (1976) 58 Cal.App.3d 377, 380 [129 Cal.Rptr. 834] ["Even though the defense has not been able to point to specific prior acts of violence, the official records desired to be examined were identified with reasonable particularity and the pertinence to the defense of the requested information was demonstrated."]; accord *In re Valerie E.*, supra, 50 Cal.App.3d at pp. 217-219; *Kelvin L.* v. *Superior Court*, supra, 62 Cal.App.3d at p. 828; *Hinojosa* v. *Superior Court*, supra, 55 Cal.App.3d at pp. 696-697.)

*Caldwell, supra,* 58 Cal.App.3d 377, relied principally on *In re Valerie E.*, supra, 50 Cal.App.3d 213. In the latter case the defendant—charged with battery against two police officers—moved for the production of all records involving complaints against the officers for unnecessary and excessive acts of violence or racial prejudice. Counsel's declaration in support of the motion stated in part that he was "informed and believes" that unspecified persons had ". . . made [such] complaints." (*Id.* at p. 217.) The trial court denied the motion "because defense counsel could not state with any certainty that there had in fact been any prior complaints." (*Ibid.*) On appeal, the defendant claimed that although she could not identify the specific "*content* of the material sought, her motion for discovery was not a mere 'fishing expedition' since she could identify the *type* of material desired." (*Ibid.*, original italics.)

The Court of Appeal agreed. Its reasoning is particularly pertinent to the question before us and bears full recitation: "In the present case, defendant did not have the names of any prior citizen complainants and was not aware of any complaints made against the police officers involved herein. However, proof of the existence of the sought material is not a prerequisite to the granting of a discovery motion. (*Hill* v. *Superior Court*, 10 Cal.3d 812, 817 [112 Cal.Rptr. 257, 518 P.2d 1353]; *Cash* v. *Superior Court*, 53 Cal.2d 72, 75-76 [346 P.2d 407].) A requirement of such proof would, in many cases, deny the accused the benefit of relevant and material evidence. Defendant should not be required to produce the names of specific citizen complainants. Ordinarily, an accused would never be in a position to know what complaints, if any, had been filed against certain police officers in the com-

munity. To make such a showing a condition precedent to production would make an accused's rights 'dependent upon the highly fortuitous circumstance' (see *People* v. *Chapman,* 52 Cal.2d 95, 98 [338 P.2d 428]) of the accused's detailed knowledge as to the contents of the police officers' personnel files. [¶] In the present case defendant showed more than a 'mere desire for the benefit of all information'; she clearly specified the exact material sought, i.e. all information regarding citizen complaints for excessive force against the two police officers involved in her arrest. This was sufficient to justify discovery." (*In re Valerie E., supra,* 50 Cal.App.3d at pp. 218-219.)

It is fair to assume that the Legislature was cognizant of the courts' holdings in *Valerie E.* and its progeny that the defendant need prove only the "*type* of material desired," not the "*existence* of the sought material." (*In re Valerie E., supra,* 50 Cal.App.3d at pp. 217, 219, second italics added; *People* v. *Memro, supra,* 38 Cal.3d at p. 679, fn. 19.) In expressly requiring a description of only the "type" of information requested rather than the "particular" records, it would appear that the Legislature intended to codify the preexisting case law. (§ 1043, subd. (b).)

We need not infer the Legislature's intentions in this regard, however. As was the case with respect to the materiality component of good cause, the legislative history of section 1043 demonstrates rather conclusively that the statute means precisely what it says. As noted earlier, one of the early drafts of the bill required "(2) A description of the *particular* records or information sought." (Sen. Amend. to Sen. Bill No. 1436 (1977-1978 Reg. Sess.) Apr. 3, 1978, italics added.) This requirement was deleted in the Assembly, however, and replaced by the current provision requiring only a description of the "type" of information sought. (Assem. Amend. to Sen. Bill No. 1436 (1977-1978 Reg. Sess.) Aug. 30, 1978.) A committee staff report explained the purpose of the amendment as follows: "If the petitioner already had the *particulars* of the records he would not need to use discovery." (Assem. Com. on Crim. Justice, analysis of Sen. Bill No. 1436 (1977-1978 Reg. Sess.) Aug. 28, 1978, italics added.)[7]

Thus, both the legislative history and the decisional background of section 1043, subdivision (b) support the interpretation which we adopt and which is otherwise clear from the statutory language. In requiring only a "reasonable belief" that the governmental agency has the "type" of information sought, the statute says what it means and means precisely what it says.[8]

---

[7] Clearly, the legislative drafters appear to have grasped the practical impossibility of making a factual showing that the particular records sought to be disclosed actually exist. "Prediscovery research" (dis. opn., *post*, p. 97) is fine in theory, but would translate in practice in populous metropolitan areas into a virtually insurmountable obstacle to discovery.

[8] The Court of Appeal as well as the dissent in this case have purported to glean from the legislative history an intent to repudiate earlier judicial decisions such as *Caldwell, supra,* 58

■ It is readily apparent, moreover, that defendant has met his burden in this regard. Counsel's statement of "belief" that the City "may" have other complaints of excessive force against the officers in question constitutes a rational inference from the facts of the pending litigation.[9] The police reports state that one of the arresting officers struck defendant with a closed fist and that both officers subsequently wrestled him to the ground. Counsel's affidavit avers that the officers continued to apply unnecessary and excessive force even after defendant was handcuffed and subdued. While the recited facts do not, of course, establish that the force used was in fact excessive, it is altogether fair and rational, on the basis of such facts and averments, to entertain a "reasonable belief" or inference that the same officers may have been accused of the use of excessive force in the past, and that such information may be found in their personnel records.

As noted above, a "reasonable belief" is simply a "conviction of mind . . . *arising by way of inference*" (Black's Law Dict., *supra,* at p. 141, italics added), a "belief begotten *by attendant circumstances, fairly creating it, and honestly entertained.*" (Ballantine's Law Dict., *supra,* at p. 1060, italics added.) Defendant's substantive allegations plainly meet this standard.

Defendant, in short, has satisfied the criteria for discovery under section 1043, subdivision (b), and is entitled to a determination of relevance pursuant to the provisions of section 1045.

### CONCLUSION

The City advances one proposition that is beyond dispute. ■ In enacting sections 1043 and 1045 the Legislature clearly intended to place

---

Cal.App.3d 377, and *Valerie E., supra,* 50 Cal.App.3d 213. All that the historical materials cited by the Court of Appeal and the dissent contain, however, are general statements to the effect that the bill was intended to limit access to police personnel files. Nothing in the legislative history suggests that the Legislature intended to limit discovery of peace officer personnel records by requiring a demonstration of personal knowledge of the particular records sought to be disclosed. Indeed, as noted above, the indications are precisely to the contrary.

[9] "Information and belief" is, of course, a common legal term used to indicate that "the allegation is not based on the firsthand knowledge of the person making the allegation, but that person nevertheless, in good faith, believes the allegation to be true." (Black's Law Dict., *supra,* at p. 701; see also Ballantine's Law Dict., *supra,* at p. 1324 ["Qualifying a statement as made, not as a fact, but as believed to be true from information."].) Interestingly, however, the Legislature adopted an even less stringent standard in section 1043, subdivision (b), deleting "information" from the standard phrase and leaving only the requirement of a "reasonable belief," which, as noted above, consists of a "[c]onviction of the mind, arising not from actual perception or knowledge, but by way of inference" (Black's Law Dict., *supra,* at p. 141), a thought "begotten by attendant circumstances fairly creating it, and honestly entertained." (Ballantine's Law Dict., *supra,* at p. 1060.)

Thus, it is clear that the affidavit in support of a *Pitchess* motion may be based on reasonable inferences from the facts of the pending litigation, and need not allege independent "information" showing the existence of the materials sought to be disclosed.

specific limitations and procedural safeguards on the disclosure of peace officer personnel files which had not previously been found in judicial decisions. (See *Arcelona* v. *Municipal Court, supra,* 113 Cal.App.3d at pp. 530-531 ["The scope of disclosure of verbatim reports of internal investigations . . . once generally permitted under established *Pitchess* principles . . . is now circumscribed under the statutory scheme."]; see also 2 Jefferson, Cal. Evidence Benchbook (2d ed. 1982) § 42.2, p. 1527 ["Evid. C[ode] § 1045 places certain limitations on criminal discovery not found in *Pitchess* . . . ."].)

The statutory scheme enacted by the Legislature admirably fulfills that intent. The relatively low threshold for a showing of good cause under section 1043 is tempered, in turn, by the specific exclusions, in camera review procedures, and exacting standards for disclosure of section 1045. Clearly, therefore, our decision sanctioning the use of affidavits on information and belief to demonstrate good cause will not, as the City contends, perpetuate a system of "discovery on demand." On the contrary, the use of such affidavits is plainly contemplated within the legislation itself, which strikes a fair and workable balance between the need of criminal defendants for "all relevant and reasonably accessible information" (*Pitchess* v. *Superior Court, supra,* 11 Cal.3d at p. 535), and the legitimate concerns of peace officers to shield from disclosure confidential information not essential to an effective defense or otherwise obtainable from other nonprivileged sources.[10]

The legislation, in short, works. But in any event, it is not within our province to rewrite it.

### DISPOSITION

The judgment of the Court of Appeal is reversed, and the case remanded to that court with directions to remand the matter to the municipal court for a determination of relevance pursuant to the provisions of section 1045.

Mosk, J., Broussard, J., and Kennard, J., concurred.

---

[10]The dissent's assertion that "[p]olice departments are required to keep records of citizens' complaints in order to discipline officers who use unnecessary excessive force (Pen. Code, § 832.5), not to aid the legal theories of future defendants" (dis. opn., *post*, p. 101), is notably unsupported by either authority or argument. Penal Code section 832.5, subdivision (b), which requires police departments to keep records of citizen complaints for at least five years, was enacted at the same time and as part of the same legislation which enacted sections 1043 and 1045. Thus, it would appear that one purpose of requiring police departments to retain such records is *precisely* to make them accessible to future defendants. Moreover, where an actual pattern of excessive force by an officer is established, the limited disclosure of such records does not simply "aid the legal theories" of the defendant, but benefits the department and the public as a whole.

LUCAS, C. J.—I respectfully dissent. Like Justice Panelli, I am concerned that the majority's holding will lead to burdensome demands for discovery in situations not contemplated by the Legislature. Fortunately, the Legislature retains the authority to review this decision and take appropriate responsive action.

PANELLI, J.—I respectfully disagree with the interpretation of the good cause requirement of Evidence Code section 1043, subdivision (b) offered by the majority opinion. Unlike the majority, I strongly believe that, in enacting Senate Bill No. 1436, 1977-1978 Regular Session (Stats. 1978, ch. 630, §§ 1-7, pp. 2082-2084; Pen. Code, §§ 832.5, 832.7 and 832.8; and Evid. Code, §§ 1043-1046), the Legislature meant to disavow the *Caldwell* court's approval of *Pitchess* affidavits based solely on information and belief (*Caldwell* v. *Municipal Court* (1976) 58 Cal.App.3d 377 [129 Cal.Rptr. 834]) and to instead require traditional affidavits setting out the "materiality" of the information sought by the defendant to his prosecution and "reasonable belief" that the government agency has the information sought.

*Pitchess* and *Caldwell* have had a significant impact on the ease with which criminal defendants can obtain confidential police files. Filing a *Pitchess* motion has become a routine practice in prosecutions for resisting arrest or battery on a peace officer, regardless of whether the defendant or his attorney has any reason to believe the officers have actually used excessive force in the past. (Cal. Highway Patrol, Bill Rep. [on Sen. Bill No. 1436] (Sept. 5, 1978) p. 2.)

Though defendants certainly have the right to discover relevant information, my concern is the ease with which defense counsel may now obtain information from police officers' confidential personnel files. In this case, Kennedy's attorney merely submitted a form declaration in support of her *Pitchess* motion, with the names of the defendant and the police officers typed in the blank spaces. Based on this pro forma declaration, the trial court ordered an in camera inspection of the officers' employment files, after which it would release "information regarding witnesses, complaining citizens . . . , only name and address, date of incident, telephone number." In essence, this process was no more than "discovery upon demand," a practice we clearly disapproved of in *Pitchess* (*Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531, 536-537 [113 Cal.Rptr. 897, 522 P.2d 305]), and one the Legislature, by enacting Senate Bill No. 1436, clearly sought to stop. (Sen. Com. on Judiciary, Citizens' Complaints & Peace Officer Personnel Records (Apr. 3, 1978) pp. 1, 7.)

The archive records reveal that Senate Bill No. 1436 grew out of dissatisfaction with the proliferation of *Pitchess* discovery.[1] The Attorney General, author of the bill, informed the Governor that, "Senate Bill 1436 was drafted by my office in order to assist law enforcement officers . . . and represents a substantial step forward in protecting the[ir] rights . . . ." (Undated letter from Evelle Younger, Attorney General, to Edmund Brown, Jr., Governor.) The Senate Committee on the Judiciary described the purpose of the bill as, "to protect peace officer personnel records from discovery in civil or criminal proceedings" (Sen. Com. on Judiciary, Citizens' Complaints & Peace Officer Personnel Records, *op. cit. supra,* at p. 1), stating also: "This bill is an attempt to cope with alleged law enforcement reaction (of shredding records to prevent discovery) to the California Supreme Court holding in *Pitchess* . . . ." (*Id.* at p. 7.) The Assembly Committee on Criminal Justice echoed this view of the purpose of the bill, stating that, "The thrust of this bill is to give the peace officer and his or her employing agency the right to refuse to disclose any information concerning the officer or complaints or investigations . . . ." (Assem. Com. on Crim. Justice, Bill Analysis [of Sen. Bill. No. 1436] (Aug. 7, 1978) p. 2.)

Those groups that considered the bill, unlike the majority here, understood that it constituted a significant restriction on defendants' access to police personnel files. The State Public Defender, the California Attorneys for Criminal Justice, and the American Civil Liberties Union (ACLU) all opposed the bill, the ACLU stating: "In our view, the effect of SB 1436 is to preserve such records at the price of sealing them off forever from any public review." (Mar. 30, 1978, letter from Brent Barnhart, legislative advocate for the ACLU, to Sen. Dennis Carpenter, the sponsor of the bill.) The California District Attorneys Association, the Peace Officers Research Association of California and the Attorney General all supported passage of the bill. Though these political advocates may be guilty of some hyperbole, criminal justice organizations, law enforcement groups, and Senate and Assembly committees readily gleaned that Senate Bill No. 1436 was intended to restrict access to police personnel files, rather than to grant access to these records on demand, as occurred in *Caldwell, supra,* 58 Cal.App.3d 377, and in the instant case.

The majority misinterprets editorial changes made to an early draft of Senate Bill No. 1436. Subdivision (b)(3) of Evidence Code section 1043 contains two prerequisites for *Pitchess* motions: "materiality" of the requested information to the defense and "reasonable belief" that the information exists in the police department's files. The materiality requirement

---

[1] All legislative history cited in the dissenting and majority opinions is found in the Governor's Bill File for Senate Bill No. 1436.

originally stated that a motion for the discovery of police personnel records must set forth "in full detail and upon personal knowledge the materiality thereof to the issues in litigation," while the final draft dropped the requirement of full detail upon personal knowledge and stated that the motion must simply present "the materiality thereof to the subject matter involved in the pending litigation." (*Ante*, p. 89.) Importantly, the deletion of personal knowledge language related *only* to materiality, *not* to the reasonable belief requirement. By deleting personal knowledge from the materiality requirement, the drafters approved of declarations by *defense counsel* regarding the legal relevance of prior wrongdoings of the officers. The drafters did not, however, alter the section's requirement that the motion be based solely on affidavits.

The drafters also altered the language relating to reasonable belief, requiring that the motion describe the "type of records or information" rather than "the particular records or information sought." (Evid. Code, § 1043, subd. (b)(2).) From this change, the majority infers that the Legislature did not intend to require the defendant to prove that prior complaints of excessive force exist in the officer's file. (*Ante*, p. 92.) The majority ignores, however, the section's later requirement that the motion state "upon reasonable belief that such governmental agency identified has such records or information from such records." (§ 1043, subd. (b)(3).) Clearly, we must read these two subdivisions of section 1043 in tandem. Though the statute does not mandate the defendant to describe the contents of the file with particularity, it certainly demands a certain amount of prediscovery research into the officer's past.

The majority claims that a requirement of prediscovery research would become an "insurmountable obstacle." (*Ante*, p. 92, fn. 7; see generally *ante*, pp. 89-92.) Myriad defendants, however, have been able to establish the existence of other citizens' complaints against the officers who arrested them, if not also able to locate the very individuals who filed those complaints. (See e.g., *Jalilie* v. *Superior Court* (1987) 195 Cal.App.3d 487, 489 [240 Cal.Rptr. 662]; cf. *Craig* v. *Municipal Court* (1979) 100 Cal.App.3d 69 [161 Cal.Rptr. 19].) The *Pitchess* defendant's affidavit, based on the personal knowledge of the defendant rather than on information and belief, specifically listed the information sought, explained the unavailability of the citizens who lodged the complaints, and made an explicit showing of the information's relevance to the claim of self-defense. (*Pitchess, supra,* 11 Cal.3d at p. 537.) The attorney in *People* v. *Memro* (1985) 38 Cal.3d 658, 674 [214 Cal.Rptr. 832, 700 P.2d 446], could also assert a "reasonable belief" that the police department had citizens' complaints against the officers, because he was able to locate individuals who claimed they had

been beaten and threatened by the same officers who had interrogated Memro.

Federal cases have reached a similar conclusion about the obligation of a criminal defendant to demonstrate the existence of relevant information in a police officer's employment records, in the context of discovery under *Brady* v. *Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215, 83 S.Ct. 1194]. In *United States* v. *Navarro* (7th Cir. 1984) 737 F.2d 625, 630-632, the court disapproved of "[m]ere speculation" that a government file contains information relevant to the credibility of a witness as the basis for the file's disclosure. (There, the defendant sought the Immigration and Naturalization Service file of a Drug Enforcement Agency (DEA) informant, who was a legal resident of the United States, surmising that the informant's continued residency in the United States was conditioned on his cooperation with the DEA.) The court in *United States* v. *Andrus* (7th Cir. 1985) 775 F.2d 825, 842-843, relied on the holding of *Navarro* to prevent the discovery of police personnel files by a defendant accused of conspiracy to distribute cocaine. The defendant conceded he had no reason to believe the files actually contained information useful to impeach the officers at trial, but he sought their discovery nevertheless. "[W]ithout even a hint that impeaching material was contained therein," the court ruled that the defendant was not entitled to the production of the files. (*Id.* at p. 843.)

Also, the majority deemphasizes the importance of section 1043's requirement of an affidavit. (*Ante,* pp. 86-88.) The Legislature's intent to disavow the holding of *Caldwell* and require a showing on personal knowledge of a "reasonable belief" that the agency in fact has the information sought is manifest from its inclusion of the affidavit requirement in section 1043. The drafters could have made the files of an officer automatically available to the defense; they could have required only an informal showing of relevance; they could have stated that a declaration on information and belief was adequate. Instead, they inserted the word "affidavit," which carries with it an established legal meaning.

As the motion-practice equivalent of oral testimony, an affidavit must conform, as a rule, to the rules of testimony (*McLellan* v. *McLellan* (1972) 23 Cal.App.3d 343, 359 [100 Cal.Rptr. 258]; 6 Witkin, Cal. Procedure (3d ed. 1985) Proceedings Without Trial, § 29, pp. 345-346), including the requirement that it contain only facts personally known to the declarant (i.e., the rule against hearsay). (1 Jefferson, Cal. Evidence Benchbook (2d ed. 1982) § 18.8, p. 439; Evid. Code, § 1200.) The majority itself acknowledges that "an affidavit is normally presumed to state matters personally known to the affiant . . . ." (*Ante,* p. 87; see also *City of Santa Cruz* v. *Superior Court* (1987) 190 Cal.App.3d 1669, 1674 [236 Cal.Rptr. 155]; *Star Motors*

*Imports* v. *Superior Court* (1979) 88 Cal.App.3d 201, 204 [151 Cal.Rptr. 721] [civil suit discussing affidavit in support of petition for writ of mandate].)

The majority opinion stresses that in other contexts, most commonly in regard to applications for search warrants, courts allow affidavits to be based on information and belief. (*Ante,* pp. 87-88.) As the majority points out, courts have long interpreted Penal Code section 1525 to permit magistrates to issue search warrants solely on the basis of hearsay allegations in police officer affidavits. (See e.g., *Illinois* v. *Gates* (1982) 462 U.S. 213 [76 L.Ed.2d 527, 103 S.Ct. 2317]; *People* v. *Magana* (1979) 95 Cal.App.3d 453 [157 Cal.Rptr. 173].) Courts have also demanded, however, much more than bald assertions by police officers that evidence of a crime exists at a particular location. Clearly, the assertions of Kennedy's attorney in her declarations that "I am informed and believe based upon information contained in the police report as well as from defendant, that Officers Harris and Dickson . . . used excessive, unreasonable and unnecessary force to arrest defendant," and that "I believe that other complaints of use of excessive force by the officer [*sic*] may have been filed by members of the public," do not reach the level of reliability that we expect in an application for a search warrant. No magistrate could lawfully authorize the police to search a citizen's home based on a form affidavit in which the officer had typed the suspect's name and address and stated that he "is informed and believes" that the suspect is storing contraband there. Similarly, we should not misconstrue the legislative intent behind section 1043 as authorizing municipal courts to permit defense counsel to search police personnel files based on fill-in-the-blank affidavits containing boilerplate "information and belief" clauses.

The United States Supreme Court has formulated a "totality of circumstances" rule for determining probable cause to search a defendant's home or person. (*Illinois* v. *Gates, supra,* 462 U.S. at p. 238 [76 L.Ed.2d at p. 548] ["The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."].) This rule allows parties to submit affidavits containing hearsay, but requires affiants to prove the reliability of their informants. Moreover, the hearsay statements in such affidavits, included to show the state of mind of the affiant rather than for their own intrinsic truth, are admitted in order to demonstrate to the magistrate that probable cause to search exists. We should require no less in the *Pitchess* context.

I think a similar rule can work in the context of *Pitchess* motions. Municipal court judges could make a "commonsense decision" on whether defense counsel has made a good faith effort to locate prior complainants, witnesses, or *any* reliable information concerning the officer and whether the discovery motion stems from a real need for evidence in support of the defendant's claim of self-defense or from a desire to freely peruse police files in order to *create* a claim of self-defense. (Cf. *Craig, supra,* 100 Cal.App.3d at p. 76.) By inserting the requirement that *Pitchess* motions include affidavits stating upon reasonable belief that the police department has records of prior complaints, the Legislature clearly intended defense counsel to undertake some amount of prediscovery research. Though I will accept the majority's contention that "reasonable belief" is a less stringent standard than "with particularity," I must argue that section 1043 requires more than mere conclusory allegations based upon "information and belief" without demonstrating the basis for such information and belief.

The majority opinion states several times that the use of force in Kennedy's arrest, in and of itself, establishes good cause for perusal of the officers' employment files. (*Ante,* pp. 80, 85-86, 93 ["While the recited facts do not, of course, establish that the force used was in fact excessive, it is altogether fair and rational, on the basis of such facts and averments, to entertain a 'reasonable belief' or inference that the same officers may have been accused of the use of excessive force in the past, and that such information may be found in their personnel records."].) I disagree. We should not "entertain" the inference that the officers used excessive force in the past based on their use of force in the present arrest. Although the police report reveals that the officers had to use physical force to restrain Kennedy, the majority admits that it does not establish that the officers used *excessive* force in the arrest. (*Ante,* p. 93.) Moreover, the officers physically restrained Kennedy *only after* receiving a call that he had brandished a knife and threatened a passerby, and then *only after* he refused to submit to a pat-down search and took a swing at one of them. (*Ante,* pp. 78-79.) Objectively, would we not expect an officer to use some degree of physical force under these circumstances? Contrary to the majority's view, the police report of Kennedy's arrest (which Kennedy was required to append to his moving papers under Evid. Code, § 1046) affords no "reasonable belief" or cause to suspect that one of the arresting officers had ever been accused of acting violently in the past.

The majority also stresses that municipal court judges have generally refused to disclose verbatim reports from personnel files, ordering instead, as the judge in this case indicated he would order, the release of the names, addresses and telephone numbers of prior complainants and witnesses and the dates of the incidents in question. (*Ante,* p. 84; *Kelvin* v. *Superior Court*

(1976) 62 Cal.App.3d 823, 828-829 [133 Cal.Rptr. 325].) We can not rely on the municipal courts to independently restrict discovery, however, when neither the Evidence Code nor case authority requires them to do so. In addition, the in camera review of an officer's personnel file may reveal confidential personal information not relevant to the inquiry before the court. In cities the size of Santa Cruz, where the officer may frequently appear before the judge conducting the in camera review, the disclosure of such personal information would constitute an unnecessary loss of privacy and may have a deleterious effect on the officer's relationship with the court.

Employment files by definition contain confidential information. Penal Code section 832.7 explicitly states that "Peace officer personnel records . . . are confidential," and Penal Code section 832.8 delineates the contents of these records: "(a) Personal data, including marital status, family members, educational and employment history, or similar information; [¶] (b) Medical history; [¶] (c) Election of employee benefits; [¶] (d) Employee advancement, appraisal, or discipline; [¶] (e) Complaints, or investigations of complaints, concerning an event or transaction in which [the officer] participated, or which he perceived, and pertaining to the manner in which he performed his duties; or [¶] (f) Any other information the disclosure of which would constitute an unwarranted invasion of personal privacy." The majority dwells on the importance of the discovery of complaints about the officer's performance, while ignoring the loss of privacy which the officer suffers when anyone—whether judge, defense counsel or defendant—gains access to information regarding his life out of uniform. We should not give defendants the power to force such an invasion of privacy without a credible showing that the intrusion is absolutely necessary to a fair trial.

In short, several reasons exist compelling this court to reject the pro forma declarations used by Kennedy's attorney in support of her *Pitchess* motion. We must first acknowledge the legislative intent to limit access to police personnel files. (*Ante,* pp. 95-96.) Second, we should respect the privacy rights of police officers and the confidentiality of their employment files. (Cal. Const., art. I, § 1; Pen. Code, § 832.7.) Third, as we expressly cautioned in *Pitchess,* the right of discovery created in that seminal case does not authorize defendants to embark on "fishing expeditions" into the confidential personnel files of law enforcement agencies. (*Pitchess, supra,* 11 Cal.3d at p. 538; *People* v. *Cooper* (1960) 53 Cal.2d 755, 770 [3 Cal.Rptr. 148, 349 P.2d 964].) Finally, defendants' attempts to obtain the personnel files of police officers in order to buttress their claims of self-defense are merely a tertiary use of those records. Police departments are required to keep records of citizens' complaints in order to discipline officers who use unnecessary excessive force (Pen. Code, § 832.5), not to aid the legal theories of future defendants. At the very least, we must give effect to our charge

in *Pitchess* that defendants must demonstrate more than " 'a mere desire for the benefit of all information which has been obtained by the People in their investigation of the crime.' " (11 Cal.3d at p. 537.)

The majority opinion has perhaps lost the forest for the trees, dwelling on the dissection of statutory language while ignoring the broader intent of Senate Bill No. 1436. Regardless of our interpretation of the terms "materiality," "reasonable belief," "personal knowledge" and "information and belief," section 1043 instituted a "good cause" requirement for *Pitchess* discovery. Though we may argue over the exact parameters of that good cause requirement, we can not contest its existence. Good cause is certainly not satisfied by an unsupported statement that the police officers involved used excessive force in the past or by defense counsel's reiteration of the defendant's self-serving story that the officers used excessive force in his arrest. In enacting Senate Bill No. 1436, the Legislature clearly intended to discourage courts from using such paltry information in pro forma, boilerplate affidavits as the basis for granting access to the confidential employment files of peace officers. Today, the majority repudiates that legislative charge. The Legislature might do well to again turn its attention to *Pitchess* discovery, and to reconsider whether the relevant statutes, as construed today by a majority of this court, truly effectuate its intended goals and effects.

Eagleson, J., concurred.