Filed 3/20/13  P. v. Frazier CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

| | |
|---|---|
| THE PEOPLE, | C068511 |
| Plaintiff and Respondent, | (Super. Ct. No. 10F6928) |
| v. | |
| MATTHEW LUCAS FRAZIER, | |
| Defendant and Appellant. | |

Following a jury trial, defendant Matthew Lucas Frazier was convicted of two counts of criminal threats (Pen. Code, § 422)[1] and two counts of deterring an executive officer (§ 69).  The trial court sustained a strike, a serious felony, and two prior prison term allegations (§§ 1170.12, 667, subd. (a)(1), 667.5, subd. (b)), and sentenced defendant to seven years and eight months in state prison.

On appeal, defendant contends the trial court erred in addressing his *Pitchess*[2] motion, erred in failing to give a unanimity instruction for one of the counts, and

---

[1]  Subsequent undesignated statutory references are to the Penal Code.

[2]  *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

1

improperly imposed a stayed probation revocation fine. The Attorney General argues that the trial court imposed an unlawful sentence by striking the punishment for one of the criminal threats counts. We shall modify the sentence on one of the criminal threats counts, order a correction to the abstract, and affirm the judgment as modified.

BACKGROUND

On September 26, 2010, at around 6:00 p.m., Redding Police Department Officer Jason Rhoads responded to a call of a fight near a local motel. Officer Rhoads drove towards the disturbance, and saw defendant running from the area of the motel. Defendant appeared to be "impaired"; he stumbled as he ran, had an injured face, abrasions on his knee, and blood and dirt on his shirt.

Officer Rhoads drove into a gas station towards which defendant was running and tried to get his attention. When Officer Rhoads got out of his patrol car, defendant changed direction and began running towards him "at a rapid pace." Officer Rhoads called on defendant to stop. When defendant did not stop, Officer Rhoads sprayed him with pepper spray. Defendant fell to the ground, but continued yelling.

Officer Rhoads and another officer handcuffed defendant and placed him in Officer Rebecca Zufall's patrol car. Defendant had a strong odor of alcohol on him as he was being arrested. Defendant yelled, spit inside the car, and hit his head against the window. He did not stop until threatened with restraints and a spit hood.

Defendant was very belligerent towards the jail staff, and would not let the nurse examine him at the county jail. He was then placed in restraints on a gurney and transported to the hospital for medical clearance. Defendant was combative during the trip to the hospital and in the emergency room.

Defendant was placed in a hospital room with Officers Rhoads and Zufall. Corporal Peter Brindley was in and out of defendant's hospital room. Defendant, who was restrained to a bed, continued to be hostile and use profanity. He looked at Officer Rhoads and said, "Alpha Bravo, bye." Officer Rhoads, who knew defendant had been in

2

prison, took this as a threat, with "A.B." referring to the Aryan Brotherhood prison gang. Defendant also said he knew someone in the military who served in Iraq; he started singing a "Bomb Iraq" parody of the Beach Boys song "Barbara Ann," and telling Officer Rhoads "bye," which the officer interpreted as a threat directed against him. Defendant also asked Officer Rhoads if he knew the "H.A.," a reference to the Hell's Angels motorcycle gang, had been in the town during the prior weekend. He then told Officer Roads: "All I need to do is make a phone call." Several times defendant told Officer Rhoads "You're fucked. Bye."

In the emergency room, defendant looked at Officer Zufall and said, "You know when the H.A.'s were in town five to six days ago, all I got to do is make a call," and then said, "[Y]ou're fucked." Members of the Hells Angels were in Redding the previous weekend.

Corporal Brindley asked defendant if he was threatening Officer Rhoads. Defendant said he was not, and continued to make the same comments.

Officers Roads and Zufall took defendant's threats seriously.

Officer Will Williams interviewed defendant two days later. Defendant said he was sorry for talking, but he had been very drunk. He did not remember making any of the statements at issue, and was not affiliated with any members of the Aryan Brotherhood or the Hell's Angels.

DISCUSSION

I

Defendant contends the trial court improperly limited its review of materials pursuant to the *Pitchess* motion and did not make an adequate record of the materials it reviewed. We disagree.

A.

Defendant filed a written *Pitchess* motion with the trial court, seeking "[i]nformation of excessive force, dishonesty and the falsifying of police reports

3

contained in the personnel files of Officer Jason Rhoads," as well as records of citizen complaints alleging "acts of excessive force, moral turpitude, and dishonesty which were committed" and any investigation of those complaints. The motion alleged that Officer Rhoads's police report contained dishonest statements regarding defendant's and Officer Rhoads's conduct before and during defendant's arrest, and Officer Rhoads used excessive force in employing pepper spray on defendant.

At a hearing on the *Pitchess* motion, defense counsel stated that the city attorney was "opposed to" discovery related to "moral turpitude." Defense counsel argued: "I think if a police officer files false police reports, I think it's dishonesty, and I think that does qualify as moral turpitude because perjury is a count that is a moral turpitude crime. So I think that should be encompassed within the in-camera review."

The city attorney replied: "Absolutely not. Anything that's moral turpitude that [defense] counsel referenced, for example, false arrest, use of excessive force . . . , illegal arrest in regards to the seizure, . . . if you want to call those moral turpitude, fine, we've stipulated to those. But if we mean moral turpitude as meaning anything else in the broad sense of what it might mean, absolutely not."

Defense counsel replied that "moral turpitude does qualify under the factual scenario that I put forward. So I would ask the Court to also additionally look under moral turpitude crimes."

The trial court disagreed with defense counsel, stating: "My intent is to look for instances of excessive force, illegal arrest, falsification of evidence. I think falsification of evidence is essentially what you're looking for here, and to use my search for falsification of evidence -- to broaden that search into areas that have nothing to do with this type of event, I think is beyond the scope." The trial court then examined the custodian of records in chambers, in the presence of a court reporter who transcribed the proceedings.

4

The trial court examined the custodian records in camera and thereafter informed defense counsel "there is nothing to report". Copies of the materials examined by the trial court were not placed in the trial court's file and are not in the appellate record.

B.

A criminal defendant has the right to "compel discovery" of certain information in police officer personnel files by demonstrating good cause. (*Pitchess, supra*, 11 Cal.3d at pp. 536-538.) That right is codified in sections 832.7 and 832.8 and Evidence Code sections 1043 through 1045. (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 81 (*City of Santa Cruz*).)

A request for discovery of such records must be made by a written noticed motion (Evid. Code, § 1043, subd. (a)) supported by affidavits showing "good cause" for the discovery or disclosure of the documents sought. Good cause is shown by setting forth the "materiality" of the information sought to the subject matter of the pending litigation and stating "upon reasonable belief" that the identified governmental agency has the records or information sought. (Evid. Code, § 1043, subd. (b)(3); *City of Santa Cruz, supra*, 49 Cal.3d at p. 82.) This two-part showing is a "relatively low threshold for discovery." (*City of Santa Cruz, supra*, at p. 83.)

Once the trial court finds good cause has been shown, it must examine the records in chambers and disclose only those records and information that are relevant and not subject to exclusion from disclosure. (Evid. Code, § 1045, subds. (a) & (b).) To facilitate meaningful appellate review, the trial court must make a record of the documents it considered before ruling on the motion. *(People v. Mooc* (2001) 26 Cal.4th 1216, 1228-1230.)

We review the trial court's ruling for abuse of discretion. (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1039.)

Defendant asserts the trial court erred in limiting the discovery of materials related to acts of moral turpitude. Noting that "[m]isconduct involving moral turpitude may

5

suggest a willingness to lie," (*People v. Wheeler* (1992) 4 Cal.4th 284, 295-296), defendant contends he was entitled to discovery of anything in Officer Rhoads's file related to "acts of moral turpitude." He additionally argues that since no copies of the documents reviewed by the trial court were placed in the record, the record is insufficient to review the in camera hearing on appeal. Finally, defendant concludes that "[e]ven if the transcript filed under seal, of the in camera hearing, describes the documents which were reviewed, such a record would be inherently inadequate because the trial court improperly failed to review the documents for acts of moral turpitude."

Defendant's contention regarding the adequacy of the appellate record is based on *People v. Guevara* (2007) 148 Cal.App.4th 62 (*Guevara*). In *Guevara*, the custodian of records "stated under oath that none of the involved officers' personnel files contained any information that was potentially responsive to Guevara's discovery request. Accordingly, no documents from the personnel files were submitted to the court for review, and on that basis the court determined that Guevara was not entitled to any discovery. The city attorney also stated that 'just for the record, here is to be sealed a list for the four officers and what Sergeant Fitzpatrick [the custodian of records] did and examined and the case to show there was nothing relevant.' The record does not reflect that the court actually reviewed that list, and the document was not forwarded to us as part of the record on appeal. Subsequent efforts to locate that document for inclusion in the record have been unsuccessful." (*Id*. at p. 68.)

The Court of Appeal initially upheld the trial court (*Guevara, supra*, 148 Cal.App.4th at p. 68), but reversed itself on rehearing, determining that "where the custodian of records does not produce the entire personnel file for the court's review, he or she must establish on the record what documents or category of documents were included in the complete personnel file. In addition, if it is not readily apparent from the nature of the documents that they are nonresponsive or irrelevant to the discovery request, the custodian must explain his or her decision to withhold them. Absent this

6

information, the court cannot adequately assess the completeness of the custodian's review of the personnel files, nor can it establish the legitimacy of the custodian's decision to withhold documents contained therein.  Such a procedure is necessary to satisfy the Supreme Court's pronouncement that 'the locus of decisionmaking' at a *Pitchess* hearing 'is to be the trial court, not the prosecution or the custodian of records.' [Citation.]  It is for the court to make not only the final evaluation but also a record that can be reviewed on appeal."  (*Id.* at p. 69.)

We have reviewed the sealed transcript of the in camera hearing.  Unlike *Guevara*, the custodian in this case brought the officer's entire personnel file to the hearing.  The custodian described the various parts of the personnel record, and the trial court examined the custodian regarding those aspects of the personnel file which could be relevant to a *Pitchess* motion.  The custodian gave a detailed description of the contents of those records, which the trial court then independently reviewed.  Thus, *Guevara* is inapposite; since the trial court independently reviewed the officer's file and made an adequate record for appellate review.[3]  We also find that the record is adequate to determine whether the officer's file contained matters related to acts of moral turpitude.  Assuming without deciding that defendant was entitled to discovery of such materials, our review of the trial court's hearing allows us to conclude that no such materials exist.

---

[3]  A trial court does not have to photocopy the reviewed records to insure an adequate record for appellate review of a *Pitchess* motion:  "The trial court should then make a record of what documents it examined before ruling on the *Pitchess* motion.  Such a record will permit future appellate review.  If the documents produced by the custodian are not voluminous, the court can photocopy them and place them in a confidential file.  Alternatively, the court can prepare a list of the documents it considered, or simply state for the record what documents it examined.  Without some record of the documents examined by the trial court, a party's ability to obtain appellate review of the trial court's decision, whether to disclose or not to disclose, would be nonexistent."  (*People v. Mooc, supra*, 26 Cal.4th at p. 1229.)

7

Our review of the hearing allows us to conclude that the trial court did not abuse its discretion in refusing to disclose the contents of Officer Rhoads's file pursuant to defendant's *Pitchess* motion.

II

Defendant contends the trial court erred in declining to give a unanimity instruction on count 2, that defendant made criminal threats against Officer Zufall. We disagree.

"A unanimous jury verdict is required in criminal cases. [Citations.] It has long been held that a unanimity instruction must be given where the evidence shows that more than one criminal act was committed which could constitute the charged offense, and the prosecution does not rely on any single act. [Citations.]" (*People v. Sanchez* (2001) 94 Cal.App.4th 622, 631.)

Even when the defendant does not request a unanimity instruction, "such an instruction must be given sua sponte where the evidence adduced at trial shows more than one act was committed which could constitute the charged offense, and the prosecutor has not relied on any single such act. [Citations.]" (*People v. Dieguez* (2001) 89 Cal.App.4th 266, 274-275.)

Defendant contends a unanimity instruction was required because the jury could have determined that any of the various threats levied by defendant constituted criminal threats against Officer Zufall. Defendant first identifies his statement to Officer Zufall referring to the Hell's Angels and that all he had to do was to "make one phone call" as a possible threat to this officer. The next threat defendant identifies is Officer's Zufall's testimony that defendant's singing the bomb song was a threat by virtue of its use of the term "bye," along with her testimony that the bomb threats were credible and that the Aryan Brotherhood used bombs.

Also, defendant relies on the prosecutor's closing argument. The prosecutor argued that Officers Rhoads and Zufall had to change their daily routines as "they didn't

8

know what his [defendant's] connections to the Aryan Brotherhood and Hell's Angels was, but they knew it was extremely possible because of his stay in state prison." Later, the prosecutor argued: "[defense counsel] asked: So what was the A.B. or what was the H.A. going to do to these officers? And I addressed that in my first argument. We don't know, but it still is a threat. . . . [¶] Because Officer Zufall didn't know that Alpha is the first letter of the Greek alphabet; therefore, we can't believe what she has to say? Because that was [defense counsel's] question: . . . What does Alpha mean? What does Bravo mean? She knew that 'Alpha Bravo' meant 'A.B.' There is no doubt about that."

Defendant asserts the prosecution argued that all of defendant's statements regarding the Hell's Angels and the Aryan Brotherhood constituted criminal threats against Officer Zufall, and also presented evidence that she was also threatened by defendant's comments regarding the bomb song. Finding this created a great danger the jury could amalgamate evidence of multiple offenses into a single conviction, defendant concludes a unanimity instruction was required for this count.

Defendant's argument ignores the context of the various threats he made against the officers. One threat, when defendant looked at Officer Zufall and said: "You know when the H.A.'s were in town five to six days ago, all I got to do is make a call. . . . [¶] . . . [¶] . . . [Y]ou're fucked" was directed solely at Officer Zufall. The remaining threats-- the other reference to the Hell's Angels, the reference to the Aryan Brotherhood, the bomb references, and the use of the term "bye"--were made by defendant as he looked at Officer Rhoads. All three officers testified that these threats were directed towards Officer Rhoads.

Officer Zufall's testimony regarding the phrases directed at Officer Rhoads did not establish that she was threatened by those terms, but that a reasonable officer in Officer Rhoads's situation would view them as threatening. For example, while Officer Zufall testified that the phrase, "Alpha Bravo, bye," was a threatening reference to the Aryan Brotherhood, she stated that this threat was directed at Officer Rhoads and it made her

9

fearful for *his* safety. Likewise, Officer Zufall testified that, based on her experience as a law enforcement officer, the reference to the term "bye" in the song defendant sang to Officer Rhoads was a reference to using a firearm or explosive as a trap against a peace officer.

The prosecutor's closing arguments are no different. They refer to the officers' testimony establishing the threatening nature of defendant's comments, as viewed by a reasonable police officer.[4] Here, there was a single threat directed solely at Officer Zufall, and multiple threats directed solely at Officer Rhoads.[5] The trial court did not err in declining to give a unanimity instruction on the charge of criminal threats against Officer Zufall.

III

The trial court imposed a $1,400 restitution fine (§ 1202.4). In addition the trial court stated: "I am also gonna order and impose a parole revocation restitution fine under Penal Code section 1202.44, but that -- and that will be the same amount, $1,400. I am going to suspend that pending completion of parole, and it will remain suspended unless defendant is paroled and his parole is revoked."

The minutes show the imposition of a $1,400 suspended section 1202.45 parole revocation fine, while the abstract reflects a section 1202.44 probation revocation fine in the amount of $1,400.

Defendant and the Attorney General agree that the trial court could not impose a probation revocation fine.

Section 1202.44 provides that when the defendant is placed on probation, the trial court shall impose and suspend a probation revocation fine of the same amount. Under

---

[4] One element of criminal threats is "that the threatened person's fear was 'reasonabl[e]' under the circumstances. [Citation.]" (*People v. Toledo* (2001) 26 Cal.4th 221, 228.)

[5] The trial court gave unanimity instructions for the other counts.

10

section 1202.45, when the defendant is subject to parole, the trial court must impose and suspend a parole revocation fine equal to the restitution fine.

Had the trial court imposed a probation revocation fine, it would have been an unauthorized sentence subject to correction at any time. (See *People v. Chambers* (1998) 65 Cal.App.4th 819, 822-823.) However, the trial court did not commit this error. The trial court clearly intended to impose a section 1202.45 parole revocation fine, calling the fine a "parole revocation restitution fine" and ruling that it would remain suspended unless defendant was placed on parole and his parole was subsequently revoked. The reference to section 1202.44 in the transcript was thus no more than an inadvertent misstatement or a transcription error.

Although the minute order reflects the trial court's oral pronouncement, the abstract does not. We shall order an amended abstract to reflect the trial court's judgment. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

IV

The Attorney General asserts that the trial court rendered an unlawful sentence when it decided to "strike" sentencing on count 2, criminal threats, pursuant to section 1385. We agree.

Defendant was convicted of criminal threats in counts 1 and 2. At sentencing, the trial court ruled since it would have to impose a consecutive term if it sentenced defendant on count 2, it was striking the punishment for count 2 pursuant to section 1385 and *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 because there was no violence involved. In addition, the court ruled that in the absence of the Three Strikes law it would not impose consecutive terms "because the crimes were not truly independent of each other, and that they were committed close in proximity, both as to time and place such as to indicate a single period of aberrant criminal behavior."

Pursuant to section 1385, a trial court may order an action dismissed in the furtherance of justice, provided that "[t]he reasons for the dismissal [are] set forth in an

11

order entered upon the minutes." (*Id.*, subd. (a).) If the trial court has the authority to dismiss an enhancement pursuant to section 1385, subdivision (a), it may "instead strike . . . additional punishment for that enhancement in the furtherance of justice in compliance with subdivision (a).)" (*Id.*, subd. (c)(1).)

Since section 1385 allows the punishment to be stricken only for enhancements, the trial court's ruling striking the sentence for defendant's conviction in count 2 was unauthorized and subject to correction at any time.

While agreeing the sentence was unauthorized, the parties disagree as to the remedy. The Attorney General suggests we vacate the order and remand for resentencing on count 2, while defendant suggests we modify the sentence on count 2 to a concurrent term.

When a strike allegation is sustained, "[i]f there is a current conviction for more than one felony count not committed on the same occasion, and not arising from the same set of operative facts, the court shall sentence the defendant consecutively on each count" (*People v. Deloza* (1998) 18 Cal. 4th 585, 591 (*Deloza*)) under the Three Strikes law. (§§ 667, subd. (c)(6), 1170.12, subd. (a)(6).) The analysis for determining the imposition of consecutive or concurrent sentences under the Three Strikes law "is not coextensive with the analysis for determining whether section 654 permits multiple punishment." (*Deloza, supra,* at p. 595.) In deciding whether to impose consecutive or concurrent sentences, the trial court is "guided by the criteria set forth" in the California Rules of Court governing the imposition of consecutive and concurrent terms. (*Deloza, supra,* at p. 596, fn. 8.)

Here, the trial court initially indicated it intended to impose a concurrent low term for count 2, but then agreed with the prosecutor's incorrect statement that the Three Strikes law required consecutive sentences. After erroneously striking sentence on count two, the trial court said it would have imposed a concurrent low term for the offense had it been allowed to do so, as the counts 1 and 2 were not independent of one another.

12

Had the trial court correctly applied the law, it would have imposed a concurrent low term of sixteen months, doubled under the Three Strikes law to 32 months. The trial court intended to impose that term, and its finding that counts 1 and 2 were "not truly independent of each other" constitutes a finding that they arose from the same set of operative facts, and were committed on the same occasion. Ordering a remand for resentencing where the trial court's intent is so manifest would be a waste of judicial resources. We shall therefore modify the sentence to reflect the trial court's intended sentence had it correctly applied the relevant law.

## DISPOSITION

The order striking sentence for count 2, criminal threats (§ 422) is reversed. The sentence on count 2 is modified to a concurrent term of 16 months, doubled to 32 months pursuant to the Three Strikes law. In all other respects the judgment is affirmed. The trial court is directed to prepare a new abstract of judgment reflecting the modified sentence on count 2 and that a suspended fine pursuant to section 1202.45 was imposed rather than a section 1202.44 fine, and to forward a copy of the amended abstract to the Department of Corrections and Rehabilitation.


      BLEASE      , Acting P. J.


We concur:


      MAURO      , J.


      HOCH      , J.

13