Filed 2/3/22  P. v. Pell CA4/2
Opinion on remand from Supreme Court

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E073565 |
| v. | (Super.Ct.No. INF1401951) |
| TRENT WILLIAM PELL, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Johnnetta E. Anderson, Judge. Affirmed in part; reversed in part with directions.

Goldstein Legal Office and Elana Goldstein for Defendant and Appellant.

Rob Bonta and Xavier Becerra, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland and Daniel Rogers, Assistant Attorneys General, Eric A. Swenson, Kristine A. Gutierrez, Allison V. Acosta and Jennifer B. Truong, Deputy Attorneys General, for Plaintiff and Respondent.

1

While at a pool party, appellant Trent Pell tried to have sex with Jane Doe, who'd had too much to drink and had passed out on a bed. Doe's friends walked in on Pell as he stood over Doe with his pants down. They testified he appeared to be having intercourse with their friend but stopped when interrupted and fled. A jury convicted Pell of attempted rape of an unconscious person, assault with intent to rape an unconscious person, and sexual battery. The trial judge, Riverside County Superior Court Judge Johnetta E. Anderson, sentenced Pell to four years in prison for the assault with intent to rape an unconscious person—the longest potential term of imprisonment—and stayed the sentences for his other offenses.

Pell identifies four errors he says undermine the verdict: (1) the trial judge shouldn't have instructed the jury on attempted rape of an unconscious person because it is not a lesser included offense of rape of an unconscious person, (2) the prosecutor committed misconduct by asking an officer on redirect examination about the issuance of a $1 million arrest warrant bond and the prospect of having to extradite appellant from Michigan, (3) the trial judge abused her discretion when she denied his request to impeach Doe with the fact that she filed a civil lawsuit against him and received a settlement payment, and (4) the judge assigned to this case for pretrial matters abused his discretion when he denied his motion for discovery of the personnel records of a police officer who investigated his case and had later been charged with felony assault under the color of authority. We conclude there was no error and, in any event, the rulings were harmless even if erroneous.

After we issued an opinion affirming the judgment, an amendment to section 654 subdivision (a) gave trial judges new discretion, where "[a]n act or omission that is punishable in different ways by different provisions," to impose punishment under *any* of the applicable provisions. (Pen. Code, § 654(a), as amended by Stats. 2021, ch. 441, § 1 (AB 518), effective Jan. 1, 2022.) Prior to this change, the trial court was required to impose the longest potential term of imprisonment.

Pell sought the benefit of the new law in a petition for review in the California Supreme Court. On December 15, 2021, the Court granted review and directed us to reconsider the matter in view of this change to the sentencing law. We conclude the new law applies to Pell's case, and he is entitled to be resentenced by a judge exercising the new sentencing discretion.

We therefore affirm the judgment of conviction but reverse the sentence and remand for resentencing.

# I

# FACTS

A. *The Incident*

On June 16, 2014, Jane Doe, who was 20 years old at the time, attended a pool party at a friend's house. Pell also attended the party. Doe's friends knew him from a local college baseball team, but they had never spoken to him. Pell repeatedly told Doe how attractive she was over the course of the night.

By early evening, Doe was noticeably intoxicated. She had consumed nearly half the bottle of whiskey she brought with her. Her friends Katie K. and Jennifer R. noticed she was stumbling and slurring her words, so they gave her water and took her to lie down in their friend's bedroom. Katie and Jennifer returned to check on Doe three or four times, about every 15 minutes. They noticed during one checkup that Doe had vomited into the trash can they placed near the bed.

When they returned again later, they found the bedroom door locked. They managed to get the door unlocked, and inside Jennifer found Pell kneeling on the bed with his boxers around his ankles in front of Doe, who was lying flat on her back, naked from the waist down. Jennifer said Pell appeared to be thrusting inside Doe. Jennifer started yelling Doe's name, but she didn't respond. She also didn't appear to be participating in the sex act. When he heard Doe's friends, Pell quickly stood up, pulled up his pants, turned, and said, "Nothing happened, nothing happened."

Jennifer tried to block Pell from leaving the room and screamed for help. When her friend Miles responded, she told him what she saw, and Miles punched Pell in the face. Pell then fled from the house. Meanwhile, Katie tried to put Doe's bikini bottoms back on her, which was difficult because Doe wasn't moving and was just "dead weight." The friends managed to wake Doe up and ask her if she wanted to call the police, but Doe said she didn't know what had happened.

Jennifer called 911 and reported she "just witnessed a guy rape a girl." While she was making the call, Doe expressed confusion and thought they were calling the police

4

about underage drinking. Katie warned Doe might not want the police involved, and Jennifer told the dispatcher, "It's okay, never mind. Everything's fine" and hung up.

The police arrived at the house at 6:45 p.m., and Doe's parents took her to the hospital for a sexual assault forensic exam. Doe was too intoxicated to give a statement. The nurse who conducted the exam noticed Doe wore her bikini bottoms inside out and backwards. No semen or sperm cells were recovered from Doe's bikini or the vaginal or cervical swabs. However, Pell was identified as a DNA contributor in a swab of one of Doe's breasts. A criminalist testified Doe's blood alcohol concentration at the time of the incident could have been as high as .19 percent or as low as .13 percent.

B. *Pell Flees California*

A few days later, in Michigan, Officer John F. received a call from Pell's mother and aunt, who claimed they were being stalked and intimidated by an unknown person. The officer spoke with Pell, and he said he was in hiding because he believed he was being pursued by the Portuguese Mafia. He said the owner of his baseball team had told him the mafia was looking for him because of the pool party incident and recommended he leave California. The officer called the Indio Police Department to inquire about the Portuguese Mafia, but they told him the Portuguese Mafia did not have any presence in Southern California.

C. *Defense Case*

The owner of Pell's summer baseball team confirmed he told Pell to leave California. He said one of his employees told him Doe had connections to the Italian

5

Mafia and Pell's life was in danger. The team owner said he had immediately released Pell from the baseball team, rented a car for him, and gave him some cash to return home to Michigan.

D. *Verdict and Sentence*

The Riverside County District Attorney filed an information alleging Pell committed rape of an unconscious person (§ 261, subd. (a)(4), count 1, unlabeled statutory citations refer to this code), rape of an intoxicated person (§ 261, subd. (a)(3), count 2), and assault with the intent to commit rape of an unconscious or intoxicated person (§ 220, subd. (a), count 3), and sexual battery (§ 243.4, subd. (e)(1), count 4).

A jury found Pell not guilty of rape of an unconscious person (count 1) and rape of an intoxicated person (count 2) but convicted him of attempted rape of an unconscious person, assault with intent to commit rape of an unconscious or intoxicated person (count 3), and sexual battery (count 4).

The trial judge sentenced Pell to four years in state prison. The trial judge imposed the mid-term sentence of four years for count three, the mid-term sentence of three years for count one, and a one year sentence for count four. At the time, the law directed "[a]n act or omission that is punishable in different ways by different provisions of law *shall be punished* under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654(a), italics added.) Accordingly, the trial judge sentenced Pell to four years in state prison based on the conviction for count three and stayed the sentences for

6

counts one and four.{2CT 572; 7RT 1171}

Pell filed a timely notice of appeal.

## II

## ANALYSIS

A. *Instruction on Attempted Rape of an Unconscious Person*

Pell argues the trial judge, Riverside County Superior Court Judge Johnnetta E. Anderson, erred by instructing the jury on attempted rape of an unconscious person. He argues attempted rape of an unconscious person is not a lesser included offense because attempt requires specific intent, but the completed crime requires only general intent.

1. *Additional background*

At the conference on jury instructions, the prosecutor requested an instruction on attempted rape of an unconscious person as a lesser included offense of count 1 (rape of an unconscious person) and attempted rape of an intoxicated person as a lesser included offense of count 2 (rape of an intoxicated person).

The trial judge refused the attempt instruction as to count 2, because "there is no such thing as attempted rape of an intoxicated woman." Defense counsel argued the same principle applied to count 1 because the completed rape offense required general intent while attempt required specific intent and was therefore not a lesser included offense. The trial judge concluded there was no authority holding attempted rape of an unconscious person was *not* a lesser included offense and instructed the jury on attempt as to count 1 but not as to count 2.

7

The jury acquitted Pell of rape of an unconscious person but convicted him of attempted rape of an unconscious person, which the jury verdict form identified as a lesser included offense.

### 2. *Analysis*

The Legislature has provided that a "jury . . . may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, *or of an attempt to commit the offense*." (§ 1159, italics added.) This language explicitly allows prosecutors to try the accused of both charged offenses and attempts to commit those offenses. (*People v. Fontenot* (2019) 8 Cal.5th 57, 64 (*Fontenot*).)

What that means is it's irrelevant whether attempted rape of an unconscious person is a lesser included offense of rape of an unconscious person. The jury was permitted to consider the attempt charge and find Pell guilty of the offense either way. The only wrinkle is that attempt convictions *do require* proof that the defendant *specifically* intended the offense, even if the underlying offense doesn't require such proof. That is, for general intent crimes, attempts require the additional element of specific intent, which "serves to distinguish a step towards a completed crime from other behavior." (*Fontenot*, *supra*, 8 Cal.5th at p. 76.) A conviction for attempt requires that the People prove the additional intent element beyond a reasonable doubt. (*Id*. at pp. 65-66.)

Here, the trial judge properly instructed the jury they could convict Pell of attempt with respect to count 1 only if they found Pell has specific intent to commit the underlying offense. The judge instructed the jury that to prove Pell was guilty of

8

attempted rape of an unconscious person, "the People must prove that: [¶] 1. The defendant took a direct but ineffective step toward committing" rape of an unconscious person and "2. The defendant intended to commit Rape of [an] Unconscious" person. The judge also instructed the jury on the difference between general intent and specific intent crimes, and that to find Pell guilty of attempted rape of an unconscious person they would have to find he committed the attempt with specific intent.

That's all that's required for a defendant to be convicted of the attempt in this case. Section 1159 specifically says a defendant can be convicted of any offense that is a lesser included offense of the charged crime "*or of an attempt*" to commit the charged crime. (Italics added.) *Fontenot* makes clear that proving attempt requires that the jury be instructed on the additional specific intent element, and that the jury find specific intent beyond a reasonable doubt. (*Fontenot*, *supra*, 8 Cal.5th at p. 76.)

*People v. Bailey* (2012) 54 Cal.4th 740 is not to the contrary. As the Supreme Court explained in *Fontenot*, the jurors in that case were never instructed on the specific intent required for an attempted escape conviction. (*Fontenot*, *supra*, 8 Cal.5th at pp. 71-72.) As a result, when the Court overturned the underlying escape conviction, reducing it to attempted escape was not an option simply because the jury did not consider whether the defendant has specific intent, much less find that he did.

While it's true the trial judge in this case, working without the benefit of the explanation now available in *Fontenot*, improperly focused on whether attempted rape of an unconscious person was a lesser included offense, the judge nevertheless properly

9

instructed the jury on attempt under section 1159 and on specific intent. We presume the jury followed these instructions and, like the jury in *Fontenot*, properly considered and found every element of attempt. (*Fontenot*, *supra*, 8 Cal.5th at p. 73.)

B.  *Prosecutorial Misconduct*

Pell argues the prosecutor should not have asked an officer on redirect examination about the $1 million arrest warrant bond and the process for extraditing appellant from Michigan. He argues the admission of this testimony—despite a corrective instruction—constituted prejudicial prosecutorial misconduct.

1.  *Additional background*

During the cross-examination of an investigating police officer, defense counsel asked a series of questions designed to neutralize the fact that Pell appeared to have fled to Michigan after assaulting Doe. Defense counsel got the officer to acknowledge that when Pell left California for Michigan and for several days afterward, the district attorney had not filed a complaint against Pell. He also elicited testimony acknowledging the police had Pell's Michigan identification card but didn't try to call Pell or his family and no one had advised Pell not to leave California. He also elicited testimony that it was Pell's family who initiated contact with law enforcement by reaching out to the police in Michigan. The suggestion was both that Pell may have left for reasons other than to flee prosecution and that the prosecutors had not conducted a prompt or adequate investigation.

10

On redirect, the prosecutor asked the officer questions to explain how pursuing a suspect out of state would draw out the process of investigating an offense and charging a suspect. The officer explained the investigation had been more difficult than defense counsel had implied because of the nature of the offense and the fact that it appeared Pell had fled the state. He said they first interviewed the victim and witnesses and confirmed Pell had left the state before concluding the charges were warranted. The prosecutor then asked whether the police would need to have appellant extradited from Michigan after he was charged. The sergeant said they would and added he didn't have the power to go to Michigan to arrest appellant himself. The prosecutor next asked, "But, for example, in this case, the arrest warrant was issued—the $1 million warrant?" The sergeant confirmed the amount, and the prosecutor asked, "And he organized a bondsman to post bond without ever having to be placed in custody; is that correct?" The sergeant confirmed that was the case.

Defense counsel objected the testimony was irrelevant and inaccurate. The court sustained the objection "on other grounds" and ordered the answer stricken. Defense counsel then objected the testimony was unfairly prejudicial under Evidence Code section 352. The prosecutor responded the evidence was "part of the judicial record," requested judicial notice, and argued defense counsel had opened the door to the evidence by questioning the investigating officer about the timeliness and thoroughness of the investigation. At that point, the trial judge excused the jury.

The judge then explained to defense counsel that she was inclined to permit the prosecutor to discuss the fact that Pell was not in custody and was in another state but exclude the dollar amount of the arrest warrant bond as irrelevant. The prosecutor explained that a judge had in fact set an arrest warrant bond at $1 million. However, Pell managed to post bond early before the judge increased the amount to $1 million, so he paid a lesser amount and received an arraignment date without being taken into custody. She also said the extradition process would have taken longer to complete because Pell wasn't in custody. The prosecutor believed this information was relevant to rebut defense counsel's suggestion that law enforcement's investigation was delayed.

The judge stood by her initial position, ruling the prosecutor could ask about how the police conducted the investigation and what they did to ensure the charges were justified. However, she barred testimony about the dollar amount of the arrest warrant bond because it was "not unique to this defendant," could give the jury the wrong impression, and was therefore unfairly prejudicial.

Defense counsel asked the judge to admonish the jury regarding inaccuracies in the testimony. He represented Pell had posted a bond worth only $200,000 and had never been extradited. The judge said she would instruct the jury to disregard all testimony about the bond. However, she said it was already clear from the sergeant's testimony that appellant was not actually extradited. "[I]t was clear from the officer's testimony—he was very forthcoming—that he believed that he had come back voluntarily, that there was no extradition. So we'll leave it at that, and we won't talk about that anymore."

The prosecutor clarified the bond amount was set at $1 million prior to arraignment, but it had been reduced to $200,000 at arraignment. She added, "[I]t was not my intent to put something that was inappropriate in front of the jury," but emphasized she believed defense counsel had opened the door to testimony to explain the extended process in the case by asking questions designed to suggest there was "a lack of effort on behalf of the investigating agency and the D.A.'s office to be able to get a case initiated." The court responded, "I do not believe there was intentional ill will on the part of the prosecution."

The court proposed to tell the jury to "disregard any questions or testimony in regard to an alleged bond and not consider it for any purpose." The court read the transcript of testimony and pointed out the witness had not testified Pell *posted* a $1 million bond. Defense counsel responded the testimony still left the impression that appellant had that much money, which was inflammatory and incorrect. The judge explained the record was clear Pell had returned voluntarily and the officer's concern about extradition as a potential procedural step in his investigation was relevant and not unfairly prejudicial.

When the jury returned, the judge instructed them "to disregard any question or testimony in regards to an arrest warrant amount or the alleged bond amount in this case. And the jury is not to consider it for any purpose whatsoever. Understood?" The jury responded affirmatively.

## 2. *Analysis of prosecutorial misconduct*

"A prosecutor's conduct violates the Fourteenth Amendment to the federal Constitution when it infects the trial with such unfairness as to make the conviction a denial of due process. Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury. (*People v. Morales* (2001) 25 Cal.4th 34, 44.) Prosecutorial misconduct does not require a finding of bad faith. (See *People v. Hill* (1998) 17 Cal.4th 800, 822, 829.)

"Although it is misconduct for a prosecutor *intentionally* to elicit inadmissible testimony, merely eliciting evidence is not misconduct." (*People v. Scott* (1997) 15 Cal.4th 1188, 1218 [cleaned up]; see also *People v. Samayoa* (1997) 15 Cal.4th 795, 854 [posing questions of questionable relevance not prosecutorial error].) Here, the record does not demonstrate the prosecutor thought she was eliciting inadmissible evidence when she asked about extradition or the amount of appellant's arrest warrant bond. She explained she believed these procedural details were fair points to rebut defense counsel's suggestion in cross-examining the investigating officer, that authorities had investigated the case too slowly and inadequately. The procedures the authorities had to go through to investigate and charge a person who had left the state, which included initial steps to extradite Pell from Michigan, would have been time-consuming. While we agree with the trial judge's determination that testimony about the amount of the arrest warrant bond should not have been admitted because of its minimal relevance and potential to inflame

14

passions against Pell, we conclude the trial judge effectively addressed the problem by instructing the jury "to disregard any question or testimony in regards to the arrest warrant amount or the alleged bond amount in this case. And the jury is not to consider it for any purpose whatsoever."

To the extent Pell's "real argument is that the evidence was inadmissible," there was no error. (*People v. Scott*, *supra*, 15 Cal.4th at p. 1218 [absent evidence the prosecutor intentionally elicited inadmissible evidence, defendant's argument concerned whether the evidence was admissible].) The trial judge agreed with Pell's concerns about disclosing the amount of the arrest warrant bond, sustained his objection, and instructed the jury to disregard that testimony. Meanwhile, as the trial judge correctly pointed out, the investigating officer did not testify that Pell had in fact *posted* a $1 million bond or that police had in fact had to extradite him to get him to California. On the contrary, the record was clear Pell turned himself in voluntarily and the court excluded any evidence that Pell had paid a bond in any amount. Thus, the only problem testimony concerned the revelation that a court had *issued* a $1 million arrest warrant bond. We conclude the trial judge reasonably determined that misstep could be cured by instructing the jury to disregard testimony and not to consider that evidence for any purpose.

Even if the prosecutor did commit misconduct, we would conclude the introduction of testimony about the arrest warrant bond amount and the potential that police would have to extradite Pell was harmless. Defense counsel objected to the introduction of this evidence immediately and effectively. After a discussion outside the

15

presence of the jury, the trial judge decided the record was clear that Pell had not been extradited. She also decided that she should instruct the jury to disregard any testimony about the amount of the bond. When a trial judge sustains an objection, we presume any prejudice arising from the question is abated. (*People v. Dykes* (2009) 46 Cal.4th 731, 764.) But the trial judge went further. She instructed the jury to disregard the testimony entirely, and we presume the jury followed that instruction. (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.) If Pell had his way, his counsel would have presented evidence on the full history of the various bond amounts that were in fact set. So, the jury would have learned the bond was in fact set at $1 million at one point and that Pell posted a $200,000 bond. Thus, not only can Pell not show the judge's admonishment failed to cure any prejudice, the ruling likely saved him from the introduction of additional prejudicial information.

It's also important that the circumstances of the investigation and Pell's arrest were collateral issues. A reasonable jury would have understood the investigator's testimony about needing to have Pell extradited from Michigan to arrest him, the process of obtaining an arrest warrant with a bond amount, and the unusual course Pell followed of posting bond without being placed in custody were meant to explain why Pell was not arrested immediately. These issues had minimal bearing on whether the jury believed Pell committed the sexual assault of Doe.

Pell emphasizes that the trial judge herself recognized introducing the amount of the bond posed a danger of prejudice. He points to the judge's comment, "I don't want to

16

hear anything about how much the bond was and all this as though this is something that's just so unique to this defendant . . . . This is something not unique to this defendant. I think that it is prejudicial to allow you to get into that line of questioning." This quotation isn't as revealing as Pell makes out. The trial judge was considering whether to admit the evidence under Evidence Code section 352, which permits the exclusion of relevant evidence if its probative value is substantially outweighed by the risk of prejudice to the defendant. But "prejudice" in this context doesn't mean what it means in the context of deciding whether an error was harmful on appellate review.

Under Evidence Code section 352, what's important is whether, in the trial judge's judgment, the evidence is inflammatory or likely to confuse the jury and distract from the real issues on trial. (E.g., *People v. Jennings* (2000) 81 Cal.App.4th 1301, 1314.) What's important on appellate review is whether, in our judgment, an erroneous decision to admit evidence prejudicial in that sense may have had an effect on the outcome, because there is a reasonable probability the defendant would have received a more favorable result if the evidence had been excluded. (E.g. *People v. Munoz* (2019) 31 Cal.App.5th 143, 168.) It is common for appellate courts to conclude the admission of evidence posed a great danger of prejudice within the meaning of Evidence Code section 352, but nevertheless decide the admission was harmless within the meaning of article VI, section 13 of the California Constitution. (E.g., *People v. Frank* (1985) 38 Cal.3d 711, 731-732.)

C. *Evidence of Doe's Civil Lawsuit and Settlement*

Pell argues the trial judge abused her discretion by denying his request to impeach Doe with the fact that she had filed a civil lawsuit against him and the owners of the home where the assault occurred and received a settlement payment.

1. *Additional background*

The prosecutor filed a motion to exclude evidence that Doe filed a civil lawsuit against Pell and recovered a monetary settlement. Pell argued these facts were relevant to show Doe's "motive for perhaps not being forthright or her decision to press charges and pursue this case." Defense counsel emphasized Doe hadn't wanted to prosecute the case in the beginning and suggested the evidence that she ultimately recovered a settlement in a civil suit showed she was motivated by money, not the truth of the allegations against Pell. The trial judge asked how the lawsuit showed Doe wasn't being forthright when she had already recovered a settlement. Defense counsel responded, "she doesn't want to contradict prior statements she made in the civil case . . . [and] [s]he is not that set on pursuing this [prosecution]."

Initially, the judge agreed with defense counsel and ruled Pell could question Doe about the civil lawsuit. "[B]oth sides are entitled to let the jury be aware of any bias or motive or any interest that might exist in the case because it goes to the witness's credibility." She concluded the evidence had probative value and was not unduly prejudicial.

The parties then discussed how much information about the lawsuit would be admitted at trial. Defense counsel said the defense would limit itself to impeaching Doe by pointing out that she had initiated a lawsuit. "I have no intention of introducing the settlement amount. . . . My sole purpose in discussing this lawsuit is her bias . . . [¶] . . . You filed a lawsuit and you didn't want anyone to know about that. You waited. I am going to get into her bias and motive. That's it. I am not going to go into the weeds of it." The prosecution objected that opening those issues would make it necessary to go into more details—"That [the lawsuit] was initiated, that the case was not closed, that there was a settlement in the case, and there was payment to [Doe]. I think it is very relevant, bring up the fact, quote/unquote, 'let the defense depict her as a gold digger,' [then] it is relevant to know that she, in fact, got a settlement." The prosecution also argued it was relevant that the homeowner's insurance company paid the settlement amount.

The trial judge then asked, "So you want to bolster her veracity by saying she was paid off by insurance adjusters?" The prosecutor responded, "No. What I would like to do is not have it be mentioned at all." Despite these objections, the trial judge concluded defense counsel "can inquire into whether [Doe] filed a civil suit against Mr. Pell. That's the way it will be left." The judge reconfirmed her ruling that the evidence was admissible and not unduly prejudicial but invited the parties to brief whether she should instruct the jury on how to consider the evidence.

Defense counsel later clarified that, although Doe received a settlement of over $100,000, she had also sued the owners of the home where the incident occurred, and it

19

was their homeowner's insurance policy who paid. Defense counsel represented that Pell neither settled nor paid Doe.

The next day, the judge announced she was leaning toward reconsidering her order and barring the evidence concerning the civil suit. She explained her view that testimony that a civil suit was pending would be relevant to bias but said she had come to doubt whether a lawsuit that had settled would be as probative. "If it were pending then the argument could be made that the alleged victim is testifying in a certain manner because she's expecting to gain something in a civil suit. [¶] So I need for the defense to be very clear to me in terms of how the civil suit . . . plays any role in the alleged victim's motive or bias."

Defense counsel argued Doe originally expressed no interest in calling the police or pursuing a criminal investigation and suggested she may have changed her mind because she had a financial incentive to do so. He suggested she had to continue participating in the criminal case because she had "already started this ball rolling" and "can't go against her prior claims now." The trial judge pointed out Doe had changed her mind and participated in the law enforcement investigation long before she initiated her civil lawsuit. Defense counsel asserted "the motive for pursuing the criminal was to gain leverage in civil." The trial judge expressed concern that telling the jury about the civil suit would open the question of what happened in that suit. Defense counsel proposed telling the jury simply that it was "not pending any longer."

In the end, the trial judge changed her mind about the evidence and excluded any mention of the civil suit. "I am going to deny the request for you to get into the fact that she requested a civil suit. I don't see probative value to it. I think it is unduly prejudicial in the consumption of time, I do think would be undue consumption of time. So I am reversing myself."

   2.   *Analysis*

"'Evidence showing a witness's bias or prejudice or which goes to his credibility, veracity or motive may be elicited during cross-examination.'" (*People v. Carpenter* (1999) 21 Cal.4th 1016, 1054.) Cross-examination is subject to restriction under Evidence Code section 352 if it is cumulative or if it constitutes impeachment on collateral issues. (*People v. Mincey* (1992) 2 Cal.4th 408, 440.) The trial judge has wide discretion under Evidence Code section 352 to limit cross-examination on issues which have only marginal probative value. (*People v. Wheeler* (1992) 4 Cal.4th 284, 295-296.) "Moreover, reliance on Evidence Code section 352 to exclude evidence of marginal impeachment value that would entail the undue consumption of time generally does not contravene a defendant's constitutional rights to confrontation and cross-examination." (*People v. Brown* (2003) 31 Cal.4th 518, 545.)

We review the trial judge's determination for abuse of discretion and reverse only if the judge has exercised her discretion in an arbitrary, capricious, or patently absurd manner resulting in a manifest miscarriage of justice. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125.)

We conclude the trial judge exercised her discretion appropriately. The evidence that Doe had filed a civil lawsuit against Pell for the assault was at best marginally relevant. Critical here, as the trial judge concluded, was the fact that the civil case had settled before the trial in this case, meaning Doe no longer had any financial incentive to falsely testify or fabricate allegations. Defense counsel speculated she may have wished to maintain consistency with her claims in the civil lawsuit, but absent some indication that the settlement could be unwound if the criminal trial failed, that is too speculative a basis for opening the trial testimony on a collateral issue.

More importantly, as the trial court explained, informing the jury about the civil lawsuit would have opened the door to testimony and instructions regarding the inferences that the jury could and could not draw from that evidence. Either way, admitting the evidence would have required the expenditure of time not warranted by evidence of such marginal probative value. (See *People v. Brown*, *supra*, 31 Cal.4th at p. 545.) Against that background, we can't conclude the trial judge acted arbitrarily when she excluded the evidence. (*People v. Rodrigues*, *supra*, 8 Cal.4th at pp. 1124-1125.)

We also conclude any error was harmless. (*People v. Snow* (2003) 30 Cal.4th 43, 90.) The prosecutor's case leaned most heavily on the testimony of Doe's two friends who walked into the room and saw appellant with his pants down while Doe was passed out on the bed. Doe herself didn't remember the events. Thus, undermining her credibility would have left the strongest evidence against Pell untouched. As a result, we conclude there's no reasonable probability Pell would have realized a more favorable

22

result had his counsel been allowed to question Doe about the civil lawsuit.

D. *Denial of Pell's Pitchess Motion*

Pell argues the judge who heard his pretrial motion under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*) abused his discretion when he refused to order discovery of the personnel records of a police officer who investigated his case. The prosecutor had informed defense counsel the officer had been charged with felony assault under the color of authority, and Pell speculated the officer's personnel files might contain evidence that would undermine his credibility.

*1. Additional background*

Before trial, Pell filed a motion to compel discovery of the personnel records of an Indio police officer involved in the case. The officer had recently been charged with felony assault under the color of authority after being "caught on videotape assaulting a man while on duty" and "kick[ing] the victim in the face."

The officer in question was one of the first officers to respond to investigate the incident in this case, and he interviewed witnesses, collected evidence, and prepared reports. Pell argued the officer's "character for truth and veracity" had been called into question and that he was "entitled to know whether or not [the officer] has engaged in any other similar behavior that could further erode his credibility." He also argued the assault allegation against the officer entitled him to "evidence of other acts [that are] similar," "any other acts that may indicate moral turpitude," and "all potentially exculpatory materials." The City of Indio opposed the motion, arguing Pell had failed to

23

show good cause because he hadn't plausibly explained how the protected records were relevant.

At the hearing, the presiding judge, Riverside County Superior Court Judge Dale R. Wells, indicated he was inclined to deny the motion. "I'm sympathetic to the reasons for filing the motion as set forth in the motion; however, I do not think it complies with the statutory requirement to show a plausible factual scenario that's internally consistent as to how the felony charges against [the officer] relate to this particular case."

Defense counsel argued the assault charges "put in question his character for truthfulness." The judge responded, "[F]elony charges have been filed against the officer [] for excessive force, not for, you know, falsifying a report." Defense counsel responded, "we would be willing to reasonably limit it if the court were to at least be willing to look in camera through that officer's file and determine if there's anything there that reflects on his character for truthfulness or accuracy in reporting." She also said, "[W]e do deny the accuracy of the reporting in the police reports in this case," but acknowledged "there's no specific factual scenario."

The judge denied the motion without prejudice, explaining, "You didn't give me a plausible factual scenario that would allow me to look into specific allegations. In the way [the motion is] drafted, it does kind of look like a fishing expedition."

   2. *Analysis*

A criminal defendant is entitled to discovery of information in the personnel records of a police officer accused of misconduct only on a showing of good cause.

(*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1016 (*Warrick*).) By requiring a showing of good cause, the *Pitchess* procedure balances a defendant's right to discovery of all information pertinent to his defense and a peace officer's right to privacy. (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 81-84 (*City of Santa Cruz*).)

"Good cause for discovery exists when the defendant shows both materiality to the subject matter of the pending litigation and a reasonable belief that the agency has the type of information sought. A showing of good cause is measured by relatively relaxed standards that serve to insure the production for trial court review of all potentially relevant documents." (*Warrick, supra*, 35 Cal.4th at p. 1016 [cleaned up].) This two-part showing is a "relatively low threshold for discovery." (*City of Santa Cruz, supra*, 49 Cal.3d at p. 83.)

"To show good cause[,] . . . defense counsel's declaration in support of a *Pitchess* motion must propose a defense or defenses to the pending charges. The declaration must articulate how the discovery sought may lead to relevant evidence or may itself be admissible direct or impeachment evidence [citations] that would support those proposed defenses." (*Warrick, supra*, 35 Cal.4th at p. 1024.) The trial judge then must determine "whether defendant's averments, viewed in conjunction with the police reports and any other documents, suffice to establish a plausible factual foundation for the alleged officer misconduct and to articulate a valid theory as to how the information sought might be admissible at trial." (*Warrick*, at p. 1025 [cleaned up].) The allegations in the defense declaration must be factually specific and tailored to support the claim of officer

misconduct. (*Id.* at p. 1027.) In addition, the allegations must be internally consistent and support the defense. (*Id.* at pp. 1025-1026.)

We review the judge's order denying the motion for an abuse of discretion, reversing only where the judge acted arbitrarily. (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 992.)

We conclude Pell didn't show good cause for discovery of the officer's personnel records. Pell supported his motion with a declaration which summarily cited the officer's assault charge and concluded the officer's personnel file might include evidence of dishonesty or other assaults. The declaration supplied no basis for believing the officer's personnel file did in fact contain such information. Nor did the declaration show a logical connection between the alleged assault and Pell's defense. Pell neither alleged the officer had committed an assault in this case, nor that the officer had falsified his report. When asked at the hearing to draw the connection between the assault charges the officer faced in another case and concern about the officer's truthfulness or potential misconduct in this case, defense counsel asked the court to "look in camera through that officer's file and determine if there's anything there that reflects on his character for truthfulness or accuracy in reporting." In short, as the judge concluded, it appeared Pell's counsel was on a fishing expedition, hoping to uncover evidence indicating the officer's untruthfulness based on the fact that he had committed other bad acts. The judge did not act arbitrarily in concluding Pell had not shown good cause for the discovery.

Nor can Pell establish he was prejudiced by the denial of his motion. (*People v. Samuels* (2005) 36 Cal.4th 96, 110 ["[E]ven if the trial court erred because defendant made a showing of good cause in support of his [*Pitchess* ] request . . . such error was harmless"].) Pell speculates "prior instances of dishonesty, perjury, planting of evidence, and fabrication of facts and police reports" would have damaged the officer's credibility, but he has offered no reason to believe that such evidence existed. Speculation is not enough to establish harm.

It's also important that alleging law enforcement had fabricated allegations against him played no role in his defense. The most important evidence against him came from the two eyewitnesses who walked in on Pell and saw him with his pants down, standing over Doe while she was passed out. The officer's trustworthiness could have had no impact on the testimony of those witnesses or any of the other evidence against Pell.

E. *Assembly Bill 518*

At the time of Pell's sentencing, the trial judge was required to impose the longest potential term of imprisonment, which she did by imposing a four year sentence. The full sentence consisted of the mid-term of four years for count three, the mid-term of three years for count one, stayed under section 654(a), and one year for count four, also stayed under section 654.{2CT 572; 7RT 1171}

After we issued an opinion affirming the judgment, the Legislature gave trial judges new discretion, where "[a]n act or omission that is punishable in different ways by different provisions," to impose punishment under any of those provisions. (§ 654(a), as

27

amended by Stats. 2021, ch. 441, § 1 (AB 518), effective January 1, 2022.) Pell sought the benefit of the new law in a petition for review in the California Supreme Court, which granted review and directed us to reconsider the matter in view of this change to the sentencing law.

We asked for supplemental briefing on this issue, and the parties agree the new sentencing provision applies to Pell's case because judgment is not final and the amendment grants the sentencing court new discretion to impose a lesser punishment. (See *People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 309.)

We agree and conclude remand for resentencing is required because the record does not reveal "a clear indication that the trial court would not have reduced the sentence even if at the time of sentencing it had the discretion to do so." (*People v. Almanza* (2018) 24 Cal.App.5th 1104, 1110.)

## III

## DISPOSITION

We affirm the judgment of conviction but reverse the sentence and remand for resentencing.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

SLOUGH
J.

We concur:

MILLER
Acting P. J.
RAPHAEL
J.

28