Filed 7/19/23  P. v. Vasquez CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Mono)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOSUE ADALBERTO COREA VASQUEZ,<br><br>Defendant and Appellant. | C095599<br><br>(Super. Ct. No. MFE20000775) |

Defendant Josue Adalberto Corea Vasquez drove to Jose Omar Hernandez Sanchez's house in the middle of the night and waited for him to leave for work. Defendant brought an AK-47 assault rifle that he bought specifically for the purpose of murdering Sanchez.  The two men were coworkers, and defendant felt disrespected by Sanchez during a brief period of time in which Sanchez was defendant's supervisor. About an hour and a half after defendant parked near Sanchez's house, Sanchez walked outside, started his car to warm it up, and returned to the house.  Defendant took this opportunity to leave his car and position himself between a grouping of trees closer to the house.  When Sanchez came back outside to leave for work, defendant took aim and said

1

something like, "You're not so fucking invincible now, are you?" Before Sanchez could respond, defendant pulled the trigger, emptying the 30-round magazine and ending Sanchez's life.

A jury convicted defendant of first degree murder, found that the murder was committed by means of lying in wait, and also found that defendant personally and intentionally discharged a firearm causing Sanchez's death. The trial court sentenced defendant to state prison for life without the possibility of parole (LWOP) plus a consecutive term of 25 years to life.

On appeal, defendant challenges the lying-in-wait special circumstance as unconstitutional because it fails to genuinely narrow the class of persons eligible for the death penalty or LWOP and it does not reasonably justify a more severe sentence than other premeditated murders. Because our Supreme Court has "repeatedly rejected" this argument (*People v. Casares* (2016) 62 Cal.4th 808, 849, disapproved on another point in *People v. Dalton* (2019) 7 Cal.5th 166, 214; see also *People v. Carasi* (2008) 44 Cal.4th 1263, 1310; *People v. Gutierrez* (2002) 28 Cal.4th 1083, 1148), we must do the same. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Defendant also asks this court to review the sealed transcript of in camera proceedings conducted by the trial court in connection with his *Pitchess* motion.[1] Having done so, we conclude the trial court did not abuse its discretion in determining the personnel files it reviewed contained no discoverable material. We therefore affirm the judgment.

BACKGROUND

Due to the nature of defendant's appellate contentions, we need not provide a detailed recitation of the evidence adduced against him at trial. And because defendant

---

[1] While *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*) has been superseded by statute, motions for discovery of law enforcement officer personnel files are still referred to as *Pitchess* motions. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1225.)

2

confessed to murdering Sanchez, both to a coworker, Francisco Ramirez, and also during a recorded interview with district attorney investigator Chris Callinan, our summary of the murder is taken largely from defendant's own statements.

Sanchez was murdered outside his home during the early morning hours of October 9, 2016. The events giving rise to the murder began more than two months earlier, when Sanchez was defendant's supervisor at a Vons grocery store. Defendant hated Sanchez. This hatred appears to have stemmed primarily from the manner in which Sanchez exercised managerial authority over him, for example, giving defendant extra work and threatening to fire him and his family members who also worked at the store. During one argument between the two, defendant angrily told Sanchez "not to mess with his family."

About two months before the murder, Sanchez was relieved of his duties as manager, but continued to work at the store. Also prior to the murder, defendant told coworker Ramirez that he hated Sanchez and "had the means to make him disappear." Defendant was apparently referring to an AK-47 assault rifle that he later admitted he bought for the specific purpose of murdering Sanchez. After buying the weapon, he brought Ramirez and another coworker to a wooded area off of the highway to shoot cans. While there, defendant joked that the weapon was "really strong," and "if you hit a person with it . . . it would basically tear them up inside."

On the night of the murder, just after midnight, defendant drove past Sanchez's home four times over the span of about 20 minutes. These passes were captured by two nearby surveillance cameras. Defendant then parked on the street near the house around 12:25 a.m. As defendant later admitted, he "just circled around to see if [Sanchez] was there," and then parked on the street to wait for him to leave for work. While defendant estimated waiting for about half an hour, the surveillance camera footage reveals he was parked there for over an hour and a half.

Meanwhile, Sanchez was at home in bed with his wife. He got up sometime before 1:40 a.m. to get ready for his shift at the grocery store. Around 2:00 a.m., Sanchez went outside and started his car to warm it up. He then went back inside the house and made himself some coffee. Defendant took this opportunity to get out of his car, approach Sanchez's house with the AK-47, and position himself between a grouping of trees closer to the home. When Sanchez came back outside to leave for work, defendant took aim with the assault rifle and said something like, "You're not so fucking invincible now, are you?" Before Sanchez could respond, defendant pulled the trigger, emptying the 30-round magazine and ending Sanchez's life. Defendant then returned to his car and drove away.

Later that morning, after word of Sanchez's death made its way to the night stocking crew at the store, including Ramirez, defendant sent Ramirez a text message saying: "No one screws with me."

As mentioned, defendant later admitted to Ramirez that he murdered Sanchez. He also confessed to Investigator Callinan during a recorded interview. Defendant explained during that interview: "There was so much hate. . . . [¶] . . . [¶] . . . I shot the entire cartridge on him." Defendant also wrote and signed both a confession and a letter of apology to Sanchez's children.

We finally note that defendant testified at trial and denied killing Sanchez. He claimed Investigator Callinan threatened him at gunpoint and thereby coerced him into confessing to a murder he did not commit.

DISCUSSION

I

*Lying-in-wait Special Circumstance*

Defendant challenges the lying-in-wait special circumstance as unconstitutional because it fails to genuinely narrow the class of persons eligible for the death penalty or LWOP and it does not reasonably justify a more severe sentence than other premeditated

4

murders. However, as defendant candidly admits, our Supreme Court has "repeatedly rejected" this argument. (*People v. Casares, supra*, 62 Cal.4th at p. 849, disapproved on another point in *People v. Dalton, supra*, 7 Cal.5th at p. 214; see also *People v. Carasi, supra*, 44 Cal.4th at p. 1310; *People v. Gutierrez, supra*, 28 Cal.4th at p. 1148.) We are bound by these decisions. (*Auto Equity Sales, Inc. v. Superior Court, supra*, 57 Cal.2d at p. 455.) Defendant acknowledges as much, and raises the issue solely "to preserve it for federal review."

We must therefore reject defendant's constitutional challenge to the lying-in-wait special circumstance.

## II

## Pitchess *Review*

Defendant also asks us to review the trial court's determination, after conducting an in camera review of Investigator Callinan's personnel files under *Pitchess*, that these files contain no discoverable material. We have done so and conclude there was no abuse of discretion.

A criminal defendant has the right to "compel discovery" of certain information in police officer personnel files by demonstrating good cause. (*Pitchess, supra*, 11 Cal.3d at p. 536; see *id.* at pp. 536-538.) That right is codified in Penal Code sections 832.7 and 832.8 and Evidence Code sections 1043 through 1045. (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 81 (*City of Santa Cruz*).)

A request for discovery of such records must be made by a written noticed motion (Evid. Code, § 1043, subd. (a)) supported by affidavits showing "good cause" for the discovery or disclosure of the documents sought. Good cause is shown by setting forth the "materiality" of the information sought to the subject matter of the pending litigation and stating "upon reasonable belief" that the identified governmental agency has the records or information sought. (Evid. Code, § 1043, subd. (b)(3); *City of Santa Cruz,*

*supra*, 49 Cal.3d at p. 82.)  This two-part showing is a "relatively low threshold for discovery."  (*City of Santa Cruz*, at p. 83.)

Once the trial court finds good cause has been shown, it must conduct an in camera review of the records and disclose only those records and information that are relevant and not subject to exclusion from disclosure.  (Evid. Code, § 1045, subds. (a) & (b).)  To facilitate meaningful appellate review, the trial court must make a record of the documents it considered before ruling on the motion.  (*People v. Mooc, supra*, 26 Cal.4th at pp. 1228-1230.)

Here, defendant filed a *Pitchess* motion seeking discovery of personnel files pertaining to Investigator Callinan, specifically regarding complaints for acts of dishonesty, false arrest, illegal search and seizure, fabrication of charges or evidence, unnecessary acts of aggressive behavior, acts of violence or attempted violence, acts of excessive force or attempted excessive force, or any act involving morally lax character. In support of the motion, defendant's trial counsel submitted a declaration stating that during jury selection a potential juror, who was a former Mono County Sheriff's deputy, wrote on his juror questionnaire:  " 'The DA Investigator, Chris Callinan, is not an honest officer and should not be working in law enforcement.  Assault under the color of authority.' "  Based on this statement on the questionnaire, trial counsel stated in his declaration that the information sought in the motion would be used "to impeach the testimony of Investigator Callinan and bolster the claim of [defendant] . . . regarding being coerced at gunpoint to admit his guilt by Investigator Callinan."

The trial court found good cause to review Investigator Callinan's personnel files in camera, specifically looking for any complaints relevant to "allegations made by the defense . . . that excessive coercion or force was used to compel a confession."  After reviewing two sets of personnel files, one from Investigator Callinan's time as a sheriff's deputy and one from his time at the district attorney's office, the trial court found no discoverable material.

6

A trial court's ruling on the discoverability of material in police personnel files pursuant to *Pitchess* is reviewed for an abuse of discretion. (*People v. Hughes* (2002) 27 Cal.4th 287, 330.) We have reviewed the sealed transcript of the hearing held in camera and conclude the trial court did not abuse its discretion in determining the records contained no discoverable material.

## DISPOSITION

The judgment is affirmed.


                                      /s/
                               EARL, P. J.


We concur:


    /s/
MAURO, J.


    /s/
KRAUSE, J.